1805.                    Taber *v.* Packwood.

In the Court below,

JOSEPH PACKWOOD, Administrator of John Packwood and
Joseph Packwood, deceased, *Plaintiff;* JOB TABER, *De-
fendant.*

There may
be, by will,
a remainder
over of per-
sonal estate.

After the
death of the
legatee for
life, the re-
mainder man
may recover
the property
limited over
in an action
*on the case.*

In such ac-
tion, it is suf-
ficient to de-
scribe the
property as
consisting of
money and
other arti-
cles of per-
sonal estate,
of the value
of a specified
sum.

Construction
of a will.

THIS was an action on the case.

The declaration stated, that Phebe Shackmaple, on the
28th day of May, 1778, made her will, by which she devised
and bequeathed to John Packwood and Joseph Packwood,
who were then in full life, all her estate, of every kind, up-
on condition that they should arrive to the age of twenty-
one years, and, also, gave the use of her estate to Eli-
zabeth Westcote, during her life. Soon after executing
her will, the testatrix died, leaving personal estate, in money,
and other articles, to the amount and value of £231 : 19 : 4,
lawful money, of which Mrs. Westcote took the possession
and use, during her life. John and Joseph Packwood both
lived to the age of twenty-one years, and died during the life
of Mrs. Westcote, without having made any division or dis-
position of the property ; and Mrs. Westcote died, soon af-
terwards, in the possession of all of it. The defendant then
took possession of the same, and refused to deliver it to
the plaintiff, upon a special demand.

The defendant prayed oyer of the will, the disposing
part of which was as follows :

" All my estate, as well that which was given me by my
" late brother, which is now in my honoured mother's pos-
" session, as what other estate I may leave, after paying
" my funeral charges, and just debts, I give to my honoured
" mother, Elizabeth Westcote, during her life, and after
" her decease, to be equally divided between my two
" nephews, John Packwood and Joseph Packwood, if they

" shall be arrived to the age of twenty-one years; but if my
" honoured mother die before they shall arrive to the above
" age, then I give it in trust, to my friend and kinsman,
" Job Taber, of New-London, during their minority, to be
" paid one half of said estate to each of them, when they shall
" arrive to the age of twenty-one years ; and if either of
" them shall die before they arrive to the above age, then
" the whole to be paid to the survivor, when he shall arrive
" to the said age ; and if neither of them shall live to the
" said age of twenty-one years, I give the whole of said
" estate to the above named Job Taber to his own use.

The defendant then pleaded *not guilty*.

The jury returned a verdict for the plaintiff.

The defendant moved in arrest of judgment,

1. That the declaration was insufficient.

2. That, by the will produced on oyer, it appeared, that
John Packwood and Joseph Packwood were not entitled to
any part of the estate, if they died before Elizabeth Westcote.

The Superior Court adjudged, that the declaration was
sufficient ; and, that the second objection in the motion in
arrest was insufficient.

The general error was assigned.

*Daggett* and *Gurley*, for the plaintiff in error.

1. The question which arose in this case, was whether a
limitation over, by way of remainder, of personal chattels,
after a disposition of the use for life, be good? The pre-
ceding case of *Griggs* v. *Dodge*, in which the same point
was made, had been argued, but was undecided, when this
case came on. This case was, therefore, argued without

1805.

TABER
*v.*
PACKWOOD.

reference to the other ; and the counsel for the plaintiff in error went into an elaborate discussion of the point mentioned.

2. It was contended, that the declaration was ill for uncertainty. It contains no sufficient description of the property, for which the action is brought. The words, " personal estate, in money and other articles," are too general. Two reasons are given in our law books, why a particular description is necessary ; first, that a judgment in one case may be pleaded to another action for the same goods ; and secondly, that the defendant may know what property is claimed, and what he is to defend against. (*a*)

3. It appears from the record, that the Packwoods died before Mrs. Westcote ; but it was not the intention of the testatrix, that the property should go to them, unless they should be living at the death of Mrs. Westcote.

*A. Spalding* and *Hubbard*, for the defendant in error.

Three exceptions are taken to the judgment of the Superior Court :

I. That the declaration is too general in its description of the property.

II. That the property was given to John and Joseph Packwood only upon condition they should be living at the death of Mrs. Westcote, which fact does not appear upon the record.

III. That the bequest to the Packwoods was void, being a limitation of personal chattels upon a disposition of the use for life.

1. The words used in the declaration descriptive of the

(*a*) 4 *Burr.* 2455, *Bertie* v. *Pickering.* 2 *Ld. Raym.* 110, *Wyat* v. *Effington.*

property are, " money and other articles of personal pro-
" perty of the amount and value of £ 231 : 19 : 4." The ob-
jection is, that each article claimed should have been stated.

Every declaration, it is admitted, must contain such cer-
tainty as to apprize the defendant of the ground of the suit,
and enable him to plead a judgment upon that suit in bar of
another for the same cause. This is a special action on the
case, sounding in tort. It is a form of action that has al-
ways been treated in Great-Britain with peculiar indulgence.

(*b*) Lord MANSFIELD observes, in the case of *Bird* v. *Ran-
dall*, (*c*) that it is a liberal action, founded on the conscience
of the plaintiff's case, and is in the nature of a bill in equity.
Clearly, therefore, as much latitude in this particular is to be
allowed, as in any other form of action. Formerly, the plain-
tiff in trespass, or trover, was confined to great strictness in
the description of the property, its nature, quality, and quan-
tity. And a motion in arrest of judgment seems to have
resulted of course from a judgment in favour of the plaintiff.
But less strictness is now required. BACON, instead of
giving rules on this point, exhibits decisions, and leaves to
the reader the task of extracting the rule. And Judge
BULLER, aware that no particular rule can be drawn from
them applicable to all or any particular class of cases, ob-
serves " that the declaration ought to contain convenient
" certainty, so that the defendant may know what is meant
" thereby." (*d*) Does not this declaration contain conven-
ient certainty, and inform the defendant precisely of the
ground of the suit ?

For what purpose can greater precision be requisite ?
Will not a final determination of this cause be a bar to any
subsequent suit founded on the same cause of action ? None
can be imagined that will not require the same evidence to
support it. If the record were the only evidence of the

(*b*) 1 *Bac. Ab.* 44. 1 *Wils.* 115.
(*c*) 3 *Burr.* 1353.               (*d*) *Bul. N. P.* 32.

fact, whether a former suit was for the same matter, there might be some ground for this objection; but as matter *aliunde* is admissible to prove this fact, very exact minuteness in the description of the thing can answer no other purpose but to swell the record.

2. The objection is founded on the expressions " other articles of personal property." But if these words were expunged, the declaration would be sufficiently certain in this particular, inasmuch as it would still contain one article, to wit, *money*, as precisely defined as its nature admits of : But *utile per inutile non vitiatur.*

3. This defect, if not entirely cured, is certainly aided, by verdict. The objection might be good on demurrer, but surely cannot prevail after verdict : It shall be presumed in this, as in various other cases, that this defect was supplied by proof to the jury. And for aught apparent on the record, judgment was rendered for no other article than that particularly described in the writ.

II. But, it is said, the interest by the words of the will, never vested in the Packwoods, as they were not alive at the death of Mrs. Westcote.

The inquiry regarding this point, is only what was the intention of the testatrix ? This must be collected from the words of the will, which, it is observable, are unusually precise and laconic ;—so much so, as hardly to admit of the least shadow of doubt relative to her intention. There is nothing in the will that could give rise to the idea contended for, but the circumstance, that *in one* of the provisions of the will, she seems to contemplate their being alive at the death of Mrs. Westcote : In that case, the estate is to be equally divided between them, if they shall be arrived to the age of twenty-one years ; if not, is given in trust to her friend and kinsman, Job Taber, during their minority, to *be paid*, one half of it to each of them, when they shall arrive to

full age. There is, surely, nothing in this provision, that can justify the inference. On the contrary, it is fair to conclude, that contemplating the event, to wit, their not being alive at Mrs. Westcote's death, she would expressly have stated it, if that had been her intention. This idea is fortified by the other provisions of the will, in which are expressed, in terms, the contingencies, that shall defeat the interests of either, or both. When the provisions of a will are so clearly expressed, and exhibit a mind embracing every event regarding the legatees, their ability to receive, and the contingencies of her death, &c. is it not fair to conclude, that the intention insisted upon would have been expressed, if it had existed in the mind of the testatrix? It is the province of courts of law to *construe* wills, not to *make* them. And although a greater latitude of construction is a assumed with regard to testamentary dispositions of property than any other ; yet, it is presumed, the Court will not annex a new and entire provision to a will, upon which there is no ambiguity.

III. But the most important inquiry regards the validity of the bequest.

It must be admitted, that in Great-Britain, the country whence we derive our municipal law, the validity of this bequest would not be questioned. No objection under this law can be found against it, either from the nature of the property, or the number or remoteness of the contingencies upon which the fee of the estate is to vest, under the will. Indeed, such is the ancient common law of Great-Britain. Limitations in remainder of personal things after a bequest of them for life, it has been said, were not *generally* tolerated. (*e*) An estate-tail cannot be created in personal property, because no means exist of barring the entailment, as in cases of real property. Neither can such limitations be created by deed, as are not consistent with the precise rules regarding the doctrine of remainders. In the former case,

(*e*) 2 *Black. Com.* 42.

I

1805.

TABER
*v.*
PACKWOOD.

a perpetuity would be the necessary result, until an act of parliament, or the ingenuity of their judges, should again enable the grantee for life to possess himself of the whole estate. But, such limitations were always permitted in last wills and testaments. A distinction was, indeed, at first taken between a limitation of personal estate upon a bequest of *the thing itself*, and a bequest of its *use for life*. In the former case, it was at first doubted, whether it was not a gift of the whole estate. It happened to be a disposition of a term for years, and as an estate for life is, in contemplation of law, necessarily a greater estate than an estate for years, it followed irresistibly, that, by the bequest of the term for life, the testator had disposed of his whole interest, and there could be no remainder, whatever might be the extent of the term, or however short might be the life of the first legate. If, however, only the use of the term was given for life, the limitation was considered good. (*f*)

But this distinction was early exploded ; (*g*) and the limitation of a term upon a bequest of it for life was held to be equally valid with one upon a bequest of *its use* for life. The same doctrine was very early applied to personal chattels ; as early, indeed, as any case occurred requiring its application. For, it is believed, no case can be found in the books, where either a court of law, or court of chancery, has refused, when the subject has come properly before either, to give effect to a testamentary disposition of personal chattels, to be enjoyed after either a gift of the use, or a gift of the chattels themselves, for life ; provided the contingency was to happen within a life or lives in being, or twenty-one years afterwards.—Objections have prevailed against such ulterior limitations on account of the remoteness of the contingency, on which the fee was to vest ; but never on account of the above mentioned distinction, or the nature of the property. Indeed, nothing is more common in England, than a disposition by will of stock, libraries, furniture,

(*f*) 8 *Rep.* 95.    (*g*) 10 *Rep.* 46.

paintings, &c. to one for life, and after his death to another. The person to take the ulterior limitation may be *in esse*, or not *in esse ;* and it may be transferred from one to another, by future contingencies. Courts of equity, on a bill filed for that purpose, will direct the devisee for life, or the legatee of the particular estate, to sign an inventory of the property, which is deposited with the master of the rolls ; and, in extraordinary cases, where the security of the interest of the ulterior legatee requires it, will compel the former to give security for the benefit of the latter. (*h*) The interposition of courts of equity in these cases, is indispensible for the purpose of securing, not only the interest of the ulterior legatee, but also to secure to him the future enjoyment of the *specific* chattels ; neither of which objects falls within the province of courts of law to effect.

From the interference of courts of equity, in these cases, it has been erroneously imagined, that the doctrine is founded in equity, and belongs exclusively to its jurisdiction. But courts of law, also, recognize the doctrine, and lend every aid, consistent with their more limited powers, to such dispositions. Accordingly, actions of trover are sustained in favour of the ulterior legatee, or the persons who represent him, whether trustees, executors, or administrators, to effectuate their rights. The first case found relative to this doctrine as to personal chattels was an action of trover, in favour of the administrator of one who had bequeathed the use of his jewels, &c. to his wife, during her widowhood, against her husband.

This was as early as 1633 ; and the doctrine, in all the latitude, both as to the right, and the remedy, for which we contend in this case, is there recognized.

It was insisted, in the defence of that suit, that the pro-

(*h*) *Fearne on Exec. Dev.* 30. 2 *Freem.* 206. 1 *P. Wms.* 1. *Chancery Cases* 139. 1 *P. Wms.* 6. 2 *Freem.* 137. 1 *Br. Ch. Ca.* 279. 2 *Atk.* 82. 3 *P. Wms.* 336. 2 *Stra.* 947.

perty was the wife's paraphernalia ; and therefore, the husband could not dispose of them by will. But it was not even suggested by the counsel for the defendant, or by any of the Court, that the bequest was void, on account of the nature of the property, or that the remedy for the right was not at law. (*i*) This decision is followed by the one in the case of *Cadogan* v. *Kennett*. (*j*) The suit in this case was against a creditor to the tenant for life, who had taken them on execution. It was in favour of the trustees under the settlement, and sustained. But if a suit at law can be supported by the trustees, during the life of the first devisee, *a multo fortiori*, it may, by the representatives of the ulterior legatees, after *his death*.

The same principle is also fortified by the case of *Foley* v. *Burnell* ; (*k*) and by the late case of *Hoare* v. *Parker*, (*l*) which was trover, by an assignee of the remainder man, against a person to whom the tenant for life had pawned the goods. The suit was sustained ; and the Court observe, that it is too late to controvert the doctrine.

These were actions of trover. The present is an action on the case ; but it is presumed, that no difficulty can arise on that ground.

In ordinary cases, trover would be an adequate remedy. But, in this case, no other suit, not founded on contract, (and none could be implied to embrace this case) would comprehend the whole of the property given by the will. Trover will not lie for money generally, unless it can be identified ; and *assumpsit* would not cover the specific articles. In short, it can hardly admit of a question, that unless our law or this subject is different from the law of England, the defendant in the writ of error is entitled to the property ; that the remedy is a legal one, founded on a legal right ;

(*i*) *Cro. Car.* 343.                    (*j*) *Cowp.* 432.
(*k*) *Cowp.* 435, *in notis.*          (*l*) 2 *Term. Rep.* 376.

and that the one he has chosen is best adapted to the nature of the case.

But, it is contended, that this is not the law of Connecticut.

1. That it was decided in the case of *Smith* v. *Gates*, (*m*) that a gift of personal property for life, *ex vi termini*, imports a gift of the thing itself ; and that any executory interest to take effect afterwards is therefore void.

2. That the policy of our law is adverse to the admission of such ulterior limitations of personal estate.

The case of *Smith* v. *Gates* certainly does not authorize any conclusion against the principles advocated by the defendant in error. On the contrary, the judgment of the Supreme Court, as there reported, fairly warrants an inference in his favour. The decision of that cause turned solely on the intention of the devisor. The Court is reported to have said, that inasmuch as the policy of our law requires that personal property be transferable from one to another without impediment, and liable to the debts of the person in possession, the Court will *lean* against the creation of limited and restricted interests therein, " either by deed or will, unless by words that are clear, and definite." The gift was, in general terms, to be used and improved by her, during her widowhood ; and no disposition was made of the remainder, either on her death, or the contingency of her marriage. The Court, therefore, considered that the principal or entire object of Gates, in the restriction, was to prevent the estate from going into the hands of a stranger, and that it was his intention, that she should have it absolutely, if she should continue single and unmarried. Hence, the Court expressly say, " that they do not determine whether the estate would have revested in his, the devisor's heirs, upon the event of her marriage." In short, the only doctrine relative to this

(*m*) 2 *Root* 532.

subject, that can be derived from this case, is, that if a man gives the use of personal property *generally to one*, and does not dispose of the fee to *another*, it shall be construed an absolute gift: but if, after the bequest of the lease for life, it is limited over, in clear and definite terms, the limitation shall prevail. If the decision of the Court, in favour of its being an absolute gift, was founded on its being personal property, and therefore incapable of being limited over, would the report of that decision have left any room for doubt on the subject? Would not that ground of decision have been precisely and definitely stated? But suppose the question to be *res integra* in the State of Connecticut; ought our Courts to deviate from the law of Great-Britain on this subject?

Some respect is surely due to a doctrine, that has been tested by the experience of ages, and sanctioned by the wisdom of so many different judges. If our Courts are not *bound* by English decisions, it may, at least, become them to pay some deference to the opinions of their jurists. If those opinions had been less criticized by the " moral sense" of our Courts, our municipal law would have been at least more certain, if not better adapted to the relations of society. In the infancy of our jurisprudence, we must resort to their municipal law, for the evidence of our own; and in proportion as that is departed from, by the decisions of our Courts, the uncertainty of our own, and litigation, become encreased. Unless, therefore, the municipal law of Great-Britain, in this particular, is palpably opposed to good policy, it must be considered as the law of Connecticut.

It is said to be opposed to the genius of our law, that personal property is of too perishable a nature to be limited over; that the interests of commerce require that this sort of property should be free and unshackled; and that the doctrine will be particularly injurious, by affording to the devisee of the particular estate a false credit, on account of its possession.

To these objections we answer, That although the genius of our law favours an equality, and is opposed to a perpetuity, of property, it is not hostile to the creation of limited interests. The sentiment of our legislature, on this point, is fully evinced, by the provision to prevent perpetuities, contained in the act relating to the " *Age, ability, and capacity of persons.*" This provision, which negatively sanctions such limitations, and restricts them to the immediate issue, or descendants, of the first donee, in cases of entailment, and, in other cases, to such persons as are in being, at the time of creating the estate, has been supposed to apply exclusively to real property. It is, however, at least questionable, whether it does not embrace personal, as well as real estate. The provisions of the act preceding this clause designate the persons who may dispose of their estate, and the age for disposing of *real*, and that for disposing of *personal* ; but, in this provision, no discrimination is made between them. But would not the distinction have been continued to this clause, if any had been intended by the legislature. It speaks of estates in general, in " fee simple, fee tail, or any lesser estate," without any regard to the sort of property in which they may be created. Upon a liberal construction of the act, these terms certainly cannot be confined in their import to real property ; nor are they technically applicable alone to this species, though generally used with reference to it. There is no reason why the same indulgence should not be granted in one case, as in the other. The same necessity for the creation of such restricted interests, arising from the frailties of human nature, and the peculiar condition of families, may exist in one, as forcibly as in the other. But, however this may be, the provision at least removes all objections founded on what is termed the genius of our laws.

The objection on account of the perishable nature of personal estate, regards merely the value of the bequest. The ulterior legatee can claim no more than the residue, after a reasonable use of the property. If the property becomes consumed by the use, no one can complain but the

**1805.**

TABER
*v.*
PACKWOOD.

ulterior legatee. The community surely are not injured by its want of value. But there are various descriptions of personal property to which this idea cannot apply, and whose duration may extend far beyond a life estate. Such are terms for years, money, money in stock of different kinds, family paintings, libraries, &c. But the inconveniencies of discriminating are so obvious, that the Court will adopt the principle generally, and will not say, that because in some cases the residuary interest may not be of any value, therefore it shall not be protected in any.

The interests of commerce, and the security of credit ought certainly to be regarded by a commercial people ; but it cannot be seriously pretended, that either can be injured by a few solitary cases of restricted interests in personal estate. The empire of commerce is too deeply rooted in the enterprize and avarice of our citizens ; the means of its support are too great, and too widely diffused ; to suffer the smallest impediment from such trifling considerations. It may contract the objects of plunder within a narrower circle ; it may screen the unguarded, intemperate, or dissipated youth from the rapacity of sharpers ; the miser may complain, that, in a few cases, the property of the spendthrift is protected by law from his grasp ; but he that is satisfied with the acquisition of wealth by honourable means, will not complain of it as a discouragement to commerce.

The possession of personal property is suffered, in many cases, to afford a credit where it is not owned : and the owner shall not be divested of his property, if the possession by the debtor was consistent with the broad principles of good faith. The person in possession, is, by means of this external evidence of property, enabled to practise iniquity. Some inconvenience may arise from the circumstance. The evil, however, would probably be small in *this*, as it is in other cases, and can be avoided only by incurring a much greater one.

The right of continuing one's dominion over property

beyond the grave, is certainly one of the most valuable rights derived from civil society. The possession of it is, at the same time, one of the strongest and most honoura-able incentives to industry. It ought then to be as unlimit-ed in its exercise, and should be suffered to embrace as many of the relations and contingencies of life, as may pos-sibly consist with the welfare of community. A man's whole estate may be personal ; it may be indispensibly necessary to guard against the prodigality of his son, incom-petent to manage or retain for his children the property of their grandfather. He may have an aged relation for whose support he wishes to make provision ; and it may be indis-pensibly requisite to guard the weakness or credulity of age from the imposition of officious knaves.

These exigencies may not very often occur ; but whenever they do, the law ought, at least, to afford the mode of pro-viding for them : And, it is believed, that the one adopted by the testatrix, in the present case, is as unexceptionable as any that can be devised.

*Daggett*, in reply.

The declaration in this case is too general, even after verdict. The only description is, " money, and other arti-" cles of personal property, of the amount and value of " £ 231 : 19 : 4." The defendant is challenged on account of the receipt of the these articles, or this property. It would doubtless be permitted him to shew, that the testatrix did not die possessed of these articles ; or, that the tenant for life had consumed them with using ; or, that they were sold for the payment of the debts of the devisor ; or, that they had been delivered to the owner. How can he be prepared to defend himself on either of these grounds, by any alle-gation in this declaration ? It is said, by the counsel for the defendant in error, that an action upon the case is in the nature of a bill in equity ; (n) that it is treated with

(n) 3 *Burr.* 1353.

K

1805.

TABER
v.
PACKWOOD.

great indulgence ; (o) that all which is required is *conven-ient* certainty. (p) It should be remembered, however, that none of these observations were intended to bear on an objection taken to the generality of the description of articles of property ; nor can any authority be produced tending to shew, that less particularity is necessary, in an action on the case, than in trover, or trespass. That no decisions can be found in our law books, which advance such doctrine, as applicable to an action on the case *for a legacy*, is very clear ; because no such action can be sustained, as will be shewn more fully hereafter. For the purpose of shewing, that this is a fatal objection, even after verdict, see the authorities cited in the margin. (q) The case of *Phelps* v. *Sill*, (r) decided by this Court, at the last term, is also to the same effect. That was an action on the case against the defendant, for neglect of duty, by which the plaintiff lost " two thousand dollars worth of personal property." It appeared, that the property belonged to the plaintiff as heir to his father. After verdict, and judgment for the plaintiff in the Superior Court, that declaration was holden ill, on writ of error, for want of certainty, as well as for other reasons.

Further, this action cannot be supported upon any principles of law. It is brought by the administrator of *John* and *Joseph Packwood*, for personal property specifically devised, by *Phebe Shackmaple*, to one *Elizabeth Westcote*, during her life, and after her death, to *John* and *Joseph Packwood*. At the decease of the testatrix, this property vested in her administrator, or executor. He had the *legal title* to it, and might hold it *at law*, against every body. This cannot be doubted. He might maintain an action against *any* person, into whose hands it might come. Having possessed him-

(o) 1 *Bac. Abr.* 44. 1 *Wils.* 115.

(p) *Bul. Ni. Pri.* 82.

(q) 7 *Vin. Abr.* 394. *Co. Litt.* 303 a. 5 *Rep.* 34, 35, 36, *Plater's case.* 1 *Salk.* 237, *Martin* v. *Hendrickson.* 1 *Stra.* 637, *Wyat* v. *Effington.* *Cro. Eliz.* 817, *Wood* v. *Smith.* 4 *Burr.* 2455, *Bertie* v. *Pickering.*　　　(r) *Ante, vol.* 1. *p.* 315.

self of it, he might inventory it, and, in case it became necessary, sell it for the payment of debts. If the situation of the estate was such, that he might, consistently with his trust, deliver it over to the legatees, the Judge of Probate would have made an order to that effect. If he had squandered it, he would have been liable on his administration bond. But, without any step of this kind, an attempt is now made, by the representative of these legatees, who had no *legal* title, and only, as the case might be, an equitable interest, to recover, on the ground of an absolute right in them. To say nothing of the apparent inconveniences of taking from the Courts of Probate their appropriate business of settling estates, and making distribution according to law, this action is in direct opposition to well known principles regarding the rights of executors and administrators. At common law, no action lies against an executor, for a specific legacy, unless in case of his assent. If he will, indeed, acknowledge the right of the legatee, and promise to pay it, he may be made liable; but, without this, he cannot be rendered liable to an action. The reasons are obvious from the nature of the case. (*s*)

If this action can be maintained, upon the facts stated in the declaration, it follows, that if A. dies, having bequeathed to B. a house, or a piece of plate, and the property is in the possession of C.—B. can immediately sue, in trover or case, for this article, and recover. It will be impossible to support this doctrine, without changing the law relating to the settlement of estates, and the nature of the rights of executors to the property of their testators.

BY THE COURT, EDMOND, *Asst.* dissenting,

The judgment was affirmed.

(*s*) To shew how this question has been decided, in Great-Britain, by the ablest judges, and upon the most mature deliberation, the following cases are cited : 1 *Stra.* 70, *Young* v. *Holmes.* 5 *Term Rep.* 690, *Deeks* v. *Strutt.* *Cowp.* 284, *Atkins* v. *Hill. Cowp.* 289, *Hawkes* v. *Saunders.* 3 *East* 120, *Doe* v. *Guy.*