## HUDSON *against* WADSWORTH and others.

## WADSWORTH *against* HUDSON.

*A.*, by his last will, gave the use of his real estate to his wife, during her life, and then devised as follows: "And after the decease of my said wife, my will is, that all my estate then remaining, both real and personal, shall be equally divided to and among my daughters *B.* and *C.*, and *D.*, the only child of my daughter *E.*, now deceased; and my will further is, that in case of the decease of my above named grandson *D.*, without lawful heirs of his body, then the estate given to him in and by this will, shall be equally divided between my said two daughters *B.* and *C.*, to them and their heirs and assigns forever." After the death of the testator, his widow, two daughters and grandson, named in the will, preferred a petition to the General Assembly, stating, that it would be for the interest of all parties concerned, that certain lands, part of the real estate left by the testator, should be sold, and praying for authority to sell the interest of *D.* therein, he being a minor; whereupon it was resolved as follows: "That *H.*, parent of said minor, be authorized to sell all the right, title and interest of said minor in and to said lands, and to make conveyance thereof accordingly; and that said *H.* do vest the money of said *D.* arising therefrom in other real estate for the use of said widow, during her life, and afterwards for the use of said *D. ;* or that the said money be, by said *H.*, placed in the hands of a trustee, or of trustees, to be appointed, by the superior court, for the uses and purposes aforesaid; and that in either case, the said lands so purchased, or the said money in the hands of said trustees, shall be subject to all the directions, restrictions and limitations mentioned in said will relative to the estate therein devised to said *D.*" The lands were sold; and one third of the purchase money was placed in the hands of *W.*, the executor of the will, who was duly appointed a trustee under the resolve of the General Assembly, and was by him loaned out, on sufficient security, the principal being payable on demand, and the interest annually. Thirteen shares of bank stock, part of the personal estate left by the testator, were distributed to *D.*, subject to the provisions of the will. The widow died in 1826; and *D.*, having soon afterwards become of full age, demanded of *W.* a delivery over of the trust fund in his hands and a transfer of the bank stock.—*W.* had punctually paid over the interest of the trust fund to the widow, during her life, and to *D.* afterwards, and had also punctually paid over to *D.* the dividends on the bank stock; and was willing to make the delivery and transfer demanded by *D.*, on his giving bonds to secure the interest of *B.* and *C.*, in the event of his dying without heirs of his body; but without such security, *W.* declined a compliance with such demand. It appeared, that *D.* was not insolvent, but that he resided out of this state, and was about removing to the state of *Illinois ;* and his pecuniary circumstances were such as rendered him irresponsible, with reference to the interest of *B.* and *C.* On a bill in chance-

ry, brought by *D*. against *W*., for the trust fund and bank shares, and a cross-bill, brought by *W*. against *D*. for security, it was held, 1. that the trust fund was a mere substitution for the real estate, and the rights of the devisees were not affected, by the change which the property had undergone; 2. that *D*., under the will, took an estate tail by implication; 3. that the words in the will, "in case of the decease of my grandson *D*. without lawful heirs of his body," referred, not to an indefinite failure of issue, but simply to the want of issue at the time of *D*.'s death; and consequently, that the contingency on which the remainder was suspended, was a legal one; and *B*. and *C*. had an interest in the trust fund, by way of contingent remainder; 4. that in relation to the bank stock, the limitation over was equally valid, and *B*. and *C*. had an interest therein, by way of executory devise; and 5. that *B*. and *C*. were entitled to security from *D*., that the estate in question, of both descriptions, should be forthcoming on the contingency specified in the will; and consequently, an injunction against an action at law, commenced by *D*., and then pending, for the possession of the bank stock, was decreed.

*Hartford,*
June, 1831.

Hudson
*v.*
Wadsworth.

THESE suits were a bill in chancery, brought by *Jonathan T. Hudson* against *Daniel Wadsworth* and wife and *Benjamin Silliman* and wife; and a cross-bill, brought by *Wadsworth* against *Hudson*. Taken together, they constitute a case, of which the following are the material facts.

On the 13th of *August* 1808, *Jonathan Trumbull* Esq. made his last will and testament, duly executed to pass real estate, by which he devised to his wife *Eunice Trumbull* the full use and improvement of all his real estate, of which he should die possessed, to be enjoyed by her, at her discretion, during her natural life. The testator then proceeded as follows: "And after the decease of my said wife, my will and pleasure is, that all my estate then remaining, both real and personal, shall be equally divided to and among my daughters, *Faith Wadsworth* and *Harriet Trumbull*, and to *Jonathan Trumbull Hudson,* the only child of my daughter *Maria Hudson*, now deceased; and my will further is, that in case of the decease of my above-named grandson *Jonathan T. Hudson*, without lawful heirs of his body, born in lawful wedlock, then the estate given to him in and by this will, shall be equally divided between my said two daughters, *Faith* and *Harriet*, to them and their heirs and assigns forever." The testator appointed his wife and the defendant, *Daniel Wadsworth*, his executors. He died in *August*, 1809, leaving his two daughters mentioned in the will, *viz. Faith*, the wife of said *Wadsworth*, and *Harriet*, since married to *Benjamin Silliman*, and also his grandson, *J. T. Hudson*.

*Hartford,*
June, 1831.

Hudson
*v.*
Wadsworth.

The testator, at his death, owned and possessed real estate in the town of *Lebanon,* of the value of 15,000 dollars, and in the city of *Hartford,* of the value of 9,000 dollars, and personal estate to a considerable amount, including thirteen shares of stock in the *Hartford Bank,* since distributed to *J. T. Hudson,* subject to the provisions of the will. Shortly after the testator's death, the will was regularly proved and established. The executors named in it accepted the trust.

In *May,* 1811, a petition in behalf of *J. T. Hudson,* who was then a minor, by his father, *Henry Hudson,* and the widow and the present defendants, was preferred to the General Assembly of this state, stating, that the petitioners believed it to be for the interest of all the parties concerned, that the lands lying in the town of *Lebanon,* being part of the estate devised, should be sold; and praying the General Assembly to authorize said *Henry Hudson* to sell all the right and title of said *J. T. Hudson* in and to said lands, and to empower him to make conveyance thereof accordingly. The General Assembly granted the prayer of the petitioner; and thereupon resolved as follows: "That the said *Henry Hudson,* parent of said minor, be authorized to sell all the right, title and interest of said minor in and to said lands; and that he be empowered to make conveyance thereof accordingly; and that said *Henry Hudson* do vest the money of said *Jonathan T. Hudson* arising therefrom in other real estate for the use of said *Eunice Trumbull,* during her life, and afterwards for the use and benefit of said *Jonathan T. Hudson;* or that the said money arising from the sale of said lands, be, by said *Henry Hudson,* placed in the hands of such trustee or trustees as shall be appointed, by the superior court, for the uses and purposes aforesaid; said court being authorized to appoint such trustee or trustees, and in the event of their death or resignation, to appoint others in their stead; and that in either case, the said lands, or the said money in the hands of said trustees, shall be subject to all the directions, restrictions and limitations mentioned in said will relative to the estate therein devised to the said *Jonathan T. Hudson.*"

On the 1st of *July,* 1811, *Henry Hudson,* pursuant to the authority vested in him, by this resolution, sold and conveyed all the interest of *J. T. Hudson* in said lands in *Lebanon,* for the sum of 5000 dollars; which was paid over to *Thomas S. Williams* and *Thomas Day,* Esqrs, who had been duly appointed trustees under such resolution, to be by them held and ap-

plied according to the directions contained therein.   The trustees loaned this money to *Robert Watkinson*, on the security of a promissory note, signed by him and *Henry Champion*, payable on demand, with interest annually.   The interest accruing annually on this note was received, by the trustees, and was by them punctually paid over to Mrs. *Trumbull*, during her life, and to *J. T. Hudson* afterwards, until *February* 1828, when they resigned their trust ; and the defendant *Wadsworth*, being appointed a trustee in their stead, received said note from them ; since which he has punctually paid over the interest, as it accrued, to *J. T. Hudson*.

*Hartford,*
June, 1831.

Hudson
*v.*
Wadsworth.

Mrs. *Trumbull* died on the 1st of *February* 1826.   On the 1st of *October*, 1826, *J. T. Hudson* became twenty-one years of age.

*J. T. Hudson* claimed, that by the terms of the will, he became entitled to the possession of one third of the real estate devised, upon the decease of Mrs. *Trumbull ;* and that under the resolution of the General Assembly, he became entitled, at her decease, to receive the avails of the land sold, in what manner soever such avails might be invested ; and he therefore applied to the defendant *Wadsworth*, on the 1st of *September*, 1830, and requested him to pay over the amount of the trust fund in his hands.   *Wadsworth* did not refuse, and has never refused, to pay it over, on *Hudson's* giving security that it should be accounted for according to the terms of the will ; but this he refused to do ; and *Wadsworth* still retains the note. *Hudson* is not insolvent ; but he resides out of this state, *viz.* in the city of *New-York*, and is about removing to the state of *Illinois ;* and his pecuniary circumstances are such as render him irresponsible, and not able, without surety, to make safe to the devisees the fund in question, if they should be entitled to it, on his dying without issue.   He is now without issue.

In *October*, 1830, *Hudson* brought an action, in the name of the judge of probate for the district of *Windham*, against *Wadsworth*, on the bond given by him for the faithful performance of his duty as executor, alleging as a breach of the condition of that bond, that the defendant in such action had neglected to pay or distribute the personal estate bequeathed to the plaintiff, especially the thirteen shares of bank stock.   This action is still pending.   *Wadsworth* has, at all times, been ready and willing to transfer these shares to *Hudson*, on his giving the security required in relation to the trust fund ; but he has refus-

*Hartford,*
June, 1831.

Hudson
*v.*
Wadsworth.

ed to give such security, claiming an absolute and unconditional right to the property.

To obtain the property in the hands of *Wadsworth*, as trustee and executor, *viz.* the note for 5000 dollars and the thirteen shares of bank stock, is the object of the original bill; and to obtain from *Hudson* the security hitherto required, together with an injunction against the action at law on the probate bond, is the purpose of the cross-bill.

The whole case was reserved for the consideration and advice of this Court as to what decree ought to be passed.

*Hungerford* and *T. C. Perkins,* for the plaintiff in the original bill and defendant in the cross-bill, contended, 1. That he took under his grand-father's will, an estate in tail general, by implication, in the real estate.   *Denn* d. *Slater* v. *Slater*, 5 *Term Rep.* 335.   *Roosevelt* &. al. v. *Thurman,* 1 *Johns. Chan. Rep.* 220. 227.   *Dart* v. *Dart* & al. 7 *Conn. Rep.* 250.   *Burnet* & al. v. *Denniston* & al. 5 *Johns. Chan. Rep.* 35. 43.   *Wood* & ux. v. *Baron*, 1 *East* 260. 263.   6 *Cruise's Dig.* 268. & seq.

2. That the limitation over to Mrs. *Wadsworth* and Mrs. *Silliman* is void, being too remote.   In the first place, all limitations upon an indefinite failure of issue, are void.   This will not be questioned.   It is established by all the authorities. Secondly, this estate can go over only upon such failure.

3. That if the limitation over be not void, this being an estate limited upon an estate tail, is a *vested* remainder ; (*Badger* v. *Lloyd*, 1 *Salk.* 232. S. C.   1 *Ld. Raym.* 523.   *Ives* v. *Legge*, 3 *Term Rep.* 488. n.   4 *Kent's Comm.* 195.) and if vested, it follows necessarily, that no part of the trust fund has arisen as the price of that remainder.   It was the interest of *J. T. Hudson* only, that the legislature authorized his father to sell, and not the interest of Mrs. *Wadsworth* and Mrs. *Silliman*.   If they had a vested remainder, their estate was not in him, liable to be divested by a future contingent event, but was separately and distinctly in them, in the same manner as a vested remainder in fee simple after an estate for life, is in the remainder-man, and not in the particular tenant.   A power to a guardian to sell the estate of a minor in a piece of land, in which he had a life estate only, would not authorize the sale of the vested remainder in fee ; nor would a conveyance of his interest only divest, or at all affect, the rights of the remainder-man.

4. That *J. T. Hudson* took an absolute estate in the person-

al property. In addition to the objection to a remainder, that *Hartford,* it is limited over on too remote a contingency, which is as June, 1831. applicable to this as to the real estate, there is this further difficulty, that a limitation of personal property after an estate tail in the first devisee, is void, on the ground that the first estate absorbs the whole interest in such property, and there is nothing left to be given as a remainder. A term for years and a chattel personal stand, in this respect, on the same ground. *Leonard Lovies's* case, 10 *Co.* 87. 2 *Fonb.* 79. *Beauclerk* v. *Dormer,* 2 *Atk.* 312. *Garth* v. *Baldwin,* 2 *Ves.* 660. *Donn* v. *Penny,* 1 *Meriv.* 20. *Britton* v. *Twining,* 3 *Meriv.* 176. *Williamson* & al. v. *Daniel,* 12 *Wheat.* 568. 2 *Fearne* 161. 2 *Kent's Comm.* 286.

*Hudson v. Wadsworth.*

5. That by the provisions of the will, taken in connexion with the act of the General Assembly, *J. T. Hudson* is entitled to the possession of the proceeds of the real estate, without first giving security. First, because he was, by the will, made tenant in tail of such real estate, and had a right to the use and improvement thereof, without impeachment of waste. Secondly, it was not the intention of the General Assembly to place *J. T. Hudson* in a less favourable condition in regard to the proceeds of the land, than in regard to the land itself. Thirdly, *Henry Hudson,* by the act of the General Assembly, was authorized to sell only *J. T. Hudson's interest* therein ; and from the facts found he has sold no more. This, as has already been shewn, did not embrace the interest of Mrs. *Wadsworth* and Mrs. *Silliman.* Fourthly, the *money* in the hands of the trustees, being the avails of *J. T. Hudson's* interest in the land, is, therefore, his absolute property.

6. That if he took an absolute estate in the personal property, it follows of course, that no bonds can be required.

7. That allowing him to have only a life estate, either in the personal property or the avails of the real estate, he is, as tenant for life, entitled to the possession, without giving security. 2 *Swift's Dig.* 154. *Bill* v. *Kinaston,* 3 *Atk.* 82. *Gillespie* & al. v. *Miller,* 5 *Johns. Chan. Rep.* 21. *Westcot* v. *Cady,* 5 *Johns. Chan. Rep.* 346.

*N. Smith* and *Sherman,* contra, admitted, and would have claimed, had it not been conceded by the counsel for the adverse party, That the rights of the devisees to the proceeds of the real estate are the same which they would have had in the

*Hartford,*
*June,* 1831.

Hudson
*v.*
Wadsworth.

estate itself, had it not been sold ; and that the estate given by the will to *J. T. Hudson* in the lands in question, is an estate tail, by implication.   They then contended, 1. That admitting Mrs. *Wadsworth* and Mrs. *Silliman* to take under the will a vested remainder in the real estate, according to the claim of *J. T. Hudson's* counsel, the conclusion drawn by them does not follow.   A sale, by order of the legislature, on the joint petition of the particular tenant and those in remainder, for the sale of the land given in the will to this tenant in tail, would be fairly construed to give as full power to bar all remainders dependent on the estate tail, as could be exercised by any conveyance of record in *England*, or under a private act of parliament, when done with the consent, expressly given, of all parties in being and capable of consent.   2 *Bla. Comm.* 345.

2. That the estate given by the will in these lands to Mrs. *Wadsworth* and Mrs. *Silliman*, is not vested, but contingent, depending on the uncertain event of the death of *J. T. Hudson*, without issue then in being.   Here it may be admitted, that if by dying without issue, were meant an indefinite extinction of issue, this remainder, by the *English* law, would be vested.   A remainder may certainly be vested in interest, without being vested in possession ; for such is the fact as to every vested remainder during the continuance of the particular estate.   A remainder, too, is often vested, when the right of possession is contingent.   But if, in this case, the legal construction of the words of the will be dying without issue living at the death of *J. T. Hudson*, the estate is *contingent.*   It is legally certain, that *Hudson's* issue will finally become extinct ; but *it is* uncertain whether he will leave any issue *when he dies.*   Should he have a child, who should survive him for an hour, it will prevent the vesting of the remainder in *interest*, as well as in possession.

*English* jurists have been long dissatisfied with the technical construction given to the words " if he shall die without issue ;" and judges have availed themselves of the most trifling expressions in a will to controul that construction.   The *intent* of the testator is admitted to be the rule, in all cases.   Such being the fact, it is not a little strange, that courts should have supposed, that the expression " if he shall die without issue," did not mean a dying without issue *when he died*, but, as the case may be, a hundred years afterwards.   There is no doubt, that every testator who makes such a provision in his will, with-

out knowledge of this artificial rule, uses the words according *Hartford,* to their natural import ; and in every such case, the applica- *June, 1831.* tion of the rule defeats his intention. Hence the disposition of the courts to exclude the operation of the rule. In the exer- *Hudson* cise of this propensity, they put the natural construction on the *v.* *Wadsworth.* following expressions: " if he dies *leaving* no issue ; (*Atkinson* v. *Hutchinson,* 3 *P. Wms.* 258.)—"*leaving* no issue *behind him ; (Porter* v. *Bradley* & al. 3 *Term Rep.* 143)—" without issue *living ;" (Lamb* v. *Archer,* 1 *Salk.* 225.)—"*leaving* no legitimate son or daughter, who should have any child behind them ;" (*Sheffield* v. Lord *Orrery* & al. 3 *Atk.* 282.)—gift to two, " and if either die without issue, then to the *survivor ;"* (*Hughes* v. *Sayer,* 1 *P. Wms.* 534. *Anderson* v. *Jackson* d. *Eden,* 16 *Johns. Rep.* 382. *Lion* d. *Eden* v. *Burtiss* & al. 20 *Johns. Rep.* 483 *Jackson* d. *St. John* v. *Chew,* 12 *Wheat.* 153.) —" *leaving* no heirs of her body ;" (*Read* v. *Snell,* 2 *Atk.* 646.) —" if he die without issue, *living his brother ;" (Pells* v. *Brown, Cro. Jac.* 590.) and the general expression is constru- ed in the same way, where the intent can be gathered from the context. *Wellington* v. *Wellington, Cro. Jac.* 2165. No one of *these* qualifying terms occurs in this case ; but the same effect, in a case of personal estate, is given to a direction of the testator, that it shall be " *equally divided*" between those to whom it is given over ; and that direction is given in this will. 2 *Fearne* 242. *Smith* v. *Fisher,* 2 *Rep. Chan.* 187. These words, " equally to be divided between *Faith* and *Harriet,*" could not be satisfied, according to the case referred to, but by a division between them *personally,* which must ex- clude the idea of awaiting the ultimate failure of *Hudson's* is- sue.

This struggle to avoid an absurd construction has led to ma- ny subtle refinements and contradictory decisions. The courts in this state, unfettered by any binding authority on this point, have wisely abolished the rule altogether. In *Holmes* v. *Williams,* 1 *Root* 335. the Supreme Court of Errors explicitly de- cided, that the law of *England,* on this point, is not the law of this state ; but that the words " die without issue," ought to be construed according to their natural and grammatical import ; —that they mean without issue living *at the decease,* and not the indefinite failure of issue ; that an estate limited on such an event must vest *at the death,* if ever, and consequently, does not, in the case of an executory devise, depend on too remote a

*Hartford,*
June, 1831.

Hudson
*v.*
Wadsworth.

contingency.   This case is recognized, and the same construction given, in avowed opposition to the *English* decisions, in *Morgan* v. *Morgan,* 5 *Day* 517.  In *Couch* v. *Gorham,* 1 *Conn. Rep.* 36. a similar phraseology in a will occurred ; but the question was not made by the counsel.   Perhaps the words " surviving brethren," might have precluded the application of the *English* rule ; but more probably, the point was considered as settled beyond controversy, and therefore not suggested.   Indeed, at the time of that decision, the word " survivor" was not considered as of decisive influence ; and nearly five years afterwards, Chancellor *Kent,* in his learned opinion in *Anderson* v. *Jackson* d. *Eden,* 16 *Johns. Rep.* 397. places no reliance on it, though made a ground of argument by the counsel.

Should *Hudson* die without issue then in being, the estate tail will terminate according to its natural limitation, and *eo instanti* the remainder will vest both in interest and possession. But until that time, the whole estate tail is in *Hudson ;* and if he should leave issue, there will be no reversion in the testator's heirs at law, as would be the case in *England ;* for by the statute of this state, it will be an absolute estate in fee simple, in such issue.   *Stat.* 301. *tit.* 56. *c.* 1. *s.* 4.   This enlargement of the estate tail into a fee simple in the issue, renders it impossible to limit a *remainder* after the ultimate failure of issue ; for no remainder can be limited after a fee simple ; and as an executory devise, such ulterior limitation would be too remote and void.   In this case, therefore, by *our* law, the remainder cannot be vested.   It must either be contingent on *Hudson's* dying without issue, or a void executory devise.   The conveyance, then, of the estate given to *Hudson,* being a conveyance of the *whole* estate, devised by this clause of the will to him and the heirs of his body, the sale of his and their estate, before it was divested by the contingency, *carried the whole,* and included the same interest, which will accrue to the daughters of the testator, on the happening of that contingency.

3. That personal chattels may be limited over after such a preceding devise as would, in the case of land, constitute an estate tail, provided the limitation be not too remote.   *Hughes* v. *Sayer,* 1 *P. Wms.* 534.   *Target* & al. v. *Gaunt,* 1 *P. Wms.* 432.   *Forth* v. *Chapman,* 1 *P. Wms.* 664.   *Pleydell* v. *Pleydell* & al. 1 *P. Wms.* 748.   *Thrustout* d. *Small* v. *Denny* & al. 1 *Wils.* 270.   *Sheffield* v. Lord *Orrery* & al. 3 *Atk.* 282.

*Pinbury* v. *Elkin*, 1 *P. Wms.* 563. *Goodtitle* d. *Peake* v. *Pegden*, 2 *Term Rep.* 720. This last case was a devise of a term to " *P.* son of *D.*, and his lawful heirs, and if he leave no heirs, to the next son of *D.*; and it was held, that *heirs* meant heirs of the body, and that *leave* meant at his death, and therefore, the limitation over was good. See also *Nichols* v. *Skinner*, *Prec. Chan.* 528. *Atkinson* v. *Hutchinson*, 3 *P. Wms.* 258. *Read* v. *Snell*, 2 *Atk.* 647. 3rd point.

4. That the prayer of the cross-bill ought to be granted. First, as to the security. This ought to be given, according to the law as advanced by *Maddock*, (*vol.* 1. *p.* 178.) even were there no apparent danger on account of the irresponsibility of *Hudson*. But here the fact of danger of loss, is found by the court. The right to security is, therefore, unquestionable. The reasonableness of such a requirement and the jurisdiction of a court of chancery, in such a case, are well illustrated, by *Fearne. Vol.* 2. *p.* 45-49. Secondly, as to the injunction. If we are entitled to the security, it is obviously inequitable, that *Hudson* should prosecute his suit at law, on the probate bond, in relation to the bank shares. The executor has always been ready to transfer them, on receiving the security here sought; which *Hudson* has ever refused to give. But this would constitute no defence at law; and our only relief against the action pending, is in chancery.

HOSMER, Ch. J. The case before us presents two general questions. The first is, whether Mrs. *Wadsworth* and *Harriet Trumbull*, now Mrs. *Silliman*, will have a right, in any event, to the property in question. And the second is, if they have such right, whether the security demanded ought to be given, and the action at law enjoined.

1. I will first consider the title of Mrs. *Wadsworth* and Mrs. *Silliman* to the real estate in question, or what, in my judgment, is the same thing, to the note for the land sold, given by *Watkinson* and *Champion*.

It was no part of the intention of the petitioners to the General Assembly, or of the resolve of that body in consequence, to disturb the last will and testament of the deceased Gov. *Trumbull*. So far from this, the expression of the resolve, that the avails of the sale, whether in land or money, shall be subject to all the directions, restrictions and limitations of the will, relative to the estate therein devised to the said *Hudson*,

*Hartford,*
*June, 1831.*

*Hudson*
*v.*
*Wadsworth.*

decisively shows, that the disposition of the testator was, in every particular, to be observed. The note now in question is a mere *substitution* for the real estate sold ; and so far as the rights of the devisees are concerned, it is the same thing. Neither party has lost or acquired any right, by the change of the real estate into personalty ; but their title remains identically the same in *statu quo.*

Considering the note in question as subject to the law regarding real estate, so far as the question of title is concerned, I shall proceed to a construction of the will.

By the first recited clause, that all the testator's *estate* should be divided equally between the devisees, an estate in fee simple passes, if the force of the expression is not restrained, by something subsequent. The word *estate* is not merely descriptive of the property devised, but is expressive of the quantity of interest. 4 *Cruise's Dig.* 266. 276.

By the clause of the devise immediately succeeding the one commented on, that is, "in case of the decease of the said *Hudson*, without lawful heirs of his body," &c. the estate given to him shall be equally divided between the two daughters of the testator, the former clause of the devise is limited, and *Hudson* took an estate tail by implication. The estate was not explicitly to him and the heirs of his body ; but as the limitation over to Mrs. *Wadsworth* and Mrs. *Silliman* was on the event of his dying without *such heirs*, it is the established construction of such a devise, that the heirs general were not intended to succeed to the inheritance. Although the term *heirs* is generally *nomen collectivum*, and a word of *limitation ;* yet if there appears any clause or circumstance in a will, showing an intention to use it as a word of *purchase*, it shall receive this construction. 2 *Fearne* on *Exec. Dev.* 300. Hence, the estate devised was in tail, that is, to *Hudson* and the heirs of his body only. *Sonday's* case, 9 *Co.* 127. *Brown* v. *Jervas, Cro. Jac.* 290. 6 *Cruise's Dig.* 290. The point that *Hudson* took an estate tail, is firmly settled ; and of the numerous cases on the subject, I shall cite only a few. *Dutton* v. *Engram, Cro. Jac.* 427. *Chadock* v. *Cowley, Cro. Jac.* 695. *Brice* v. *Smith, Willes,* 1. *Fitzgerald* & al. v. *Leslie* & al. 3 *Bro. Parl. Ca.* 154. (*Toml.* ed.) *Preston* d. *Eagle* v. *Funnell, Willes* 164. *Denn* d. *Geering* v. *Shenton, Cowp.* 410. *Roe* d. *James* v. *Aves* & al., 4 *Term Rep.* 605. *Doe* d. *Neville* v. *Rivers* & al. 7 *Term Rep.* 276. *Doe* d. *Gregory* & al. v. *Whichelo, 8 Term*

*Rep.* 211. *Pierson* v. *Vickers &* al. 5 *East* 548. *Goodright* d. *Docking &* al. v. *Dunham &* al. *Doug.* 264.

I now come to a question, that has been a prominent subject of controversy between the parties. Admitting the interest in *Hudson* to be an estate tail only, what is the legal effect of the limitation over, so far as respects Mrs. *Wadsworth* and Mrs. *Silliman?*

In behalf of *Hudson*, it is said, that it is a vested remainder ; and of Mrs. *Wadsworth* and Mrs. *Silliman*, that it is a remainder contingent.

The term *remainder* is a relative expression ; and implies, that some part of the thing is previously disposed of. Vested remainders, (or remainders *executed*, whereby a *present interest* passes to the party) are where the estate is *invariably fixed* to remain to a determinate person, after the particular estate is spent. And contingent or *executory* remainders (whereby *no present interest* passes) are where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or *upon a dubious and uncertain event.* 2 *Bla. Comm.* 168, 9. I take the definitions of Sir *William Blackstone*, in substance like many others given by various authors, but in perfect completeness, in my judgment, surpassed by none. Vid. 4 *Kent's Comm.* 194. An estate is vested, as was correctly said, by the late Chancellor *Kent*, where there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. 4 *Kent's Comm.* 194. "For where it is doubtful and uncertain whether the use or estate limited *in futuro* will ever vest in interest or not, there the use or estate is said to be in contingency, because upon a future contingency it may vest or never vest, as the contingent shall happen." 10 *Co.* 85. Hence, there must be a *present capacity* of taking an estate in possession, if the possession were to become vacant, that always pertains to a vested remainder. *Willes* 337. And on the contrary, if there be no present right of possession, in the event supposed, but the point depends on a contingency, it is a contingent remainder.

What, then, was intended, by the expression "in case of the decease of my said grandson *J. T. Hudson* without lawful heirs of his body ?" Did it refer to an indefinite failure of issue, at any time thereafter ; or to *J. T. Hudson's* having issue at or before his death ?

It is not a little surprising, that any person should entertain the opinion, that an indefinite failure of issue was intended.

The idea is technical, requiring an extent of thought pertaining only to those, whose minds have been exercised on such subjects; whereas mankind in general, who are not professional men, when they speak of a person's dying without issue, couple together in thought the event of dying and the deficiency of issue, as simultaneous occurrences. That such is the intention of those, who, on making a provision for their children, use this expression, in prevention of their estates passing to others, who are not of their kin, or who are remote, not existing and not the objects of personal affection, it is impossible for me to doubt.

I am well aware, that in *Westminster-Hall,* the intention of a testator, by the use of the preceding expression, has been made to yield to an artificial and technical sense of the words; but even there the most trifling circumstance is sufficient to induce the construction of them in favour of their popular meaning.

This point, however, requires no extended discussion; for here it has been settled, deliberately and repeatedly, and ought to be considered as at rest. In *Holmes* v. *Williams* and *Crary,* 1 *Root* 332. which was a case on the will of *William Wheeler,* who devised to his grandson, and provided that " in case of his death without issue lawfully begotten of his body," the same should be given to his six sons-in-law; it was adjudged, by the court, that by the above expression was intended *a dying without issue existing at his death.* And in *Morgan* v. *Morgan,* 5 *Day* 517. the same point was, by this Court, determined in the same manner. One *John Morgan,* by his last will, devised his estate to his four sons, and subjoined this provision; that if his sons should either of them die without children, his brothers should have his part in equal proportion. One of his sons died without leaving children; and it was decided, that his estate, by force of the will, vested in his surviving brethren. It was held, by the Court, that the expression *dying without children,* was of the same import as *dying without issue ;* and that the words of the devise did not mean an indefinite failure of issue, but the dying without issue living at the brother's death.

It follows, very clearly, that the remainder in question was not vested. There was and is in Mrs. *Wadsworth* and Mrs. *Silliman* no immediate right of present enjoyment, and no present fixed right of future enjoyment. On the contrary, it is utterly uncertain, whether the estate limited over on the decease of *Hudson* without issue, will ever vest in interest.

This depends on the contingencies whether *Hudson* will marry and have lawful issue. The case falls precisely within the definition of a contingent remainder. The persons (Mrs. *Wadsworth* and Mrs. *Silliman*) are certain, but the event on which the remainder depends, is wholly uncertain. The contingency on which the remainder is suspended, is lawful. It must happen, if it ever does, within a reasonable time, that is, within a life in being. 2 *Bla. Comm.* 174. There exists no doubt, therefore, that in the fund secured by the note of *Watkinson* and *Champion*, Mrs. *Wadsworth* and Mrs. *Silliman* have an interest or expectancy, by way of contingent remainder.

With respect to the bank shares, it is extremely clear, that the same persons, Mrs. *Wadsworth* and Mrs. *Silliman*, on the happening of the contingency before mentioned, will have right, by executory devise.

It was early established law, that chattels might, in a last will, be limited over by way of remainder, after an estate in them for life ; (*Manning's* case, 6 *Co.* 95. *Lampet's* case, 10 *Co.* 46. *Child* v. *Baylie*, *Cro. Jac.* 459.) and if necessary, it might be satisfactorily shown, that the estate may equally be created by deed.

This limitation by way of remainder, is applicable as well to *money* as to other chattels. This appears from the cases of *Griggs* v. *Dodge*, 2 *Day* 28. and *Taber* v. *Packwood*, 2 *Day* 52. And the same point is firmly established, by numerous decisions in courts of equity. *Tissen* v. *Tissen*, 1 *P. Wms.* 500. *Pleydell* v. *Pleydell*, 1 *P. Wms.* 748. *Porter* v. *Tournay*, 3 *Ves.* jun. 311. *Randall* v. *Russell*, 3 190. *Moffat's* exrs. v. *Strong*, 10 *Johns. Rep.* 12. *Westcott* & al. v. *Cady* & al. 5 *Johns. Chan. Rep.* 334. *Scott* v. *Price*, 2 *Serg. & Rawle* 59. *Deihl* & al. v. *King* & al. 6 *Serg. & Rawle* 29. *Logan* v. *Ladson's* exr. 1 *Desaus.* 271.

It is, however, an established rule, that the same expressions, which, in a freehold, create an estate tail, in chattels create an absolute interest ; otherwise, it would tend to a perpetuity, as the devisee or grantee in tail has no method of barring the entail. *Seale* v. *Seale*, *P. Wms.* 290. *Brouncker* v. *Bagot*, 1 *Meriv.* 271. 1 *Madd. Chan.* 488. 10 *Co.* 87. 2 *Fearne on Cont. Rem* 161, 167. Hence a remainder over cannot be permitted on such a limitation ; for the whole fee is absorbed in the previous disposition of the estate, and there cannot be a remainder. *Dyer* 7. *pl.* 8.

46

*Hartford,*
*June, 1831.*

Hudson
*v.*
Wadsworth.

But as in a last will a fee simple in land, or other less estate, may be limited after a fee simple, on a future contingency, if it is to happen within one or more life or lives in being, and twenty-one years and a fraction afterwards ; so after an estate tail in chattels, although such estate cannot be limited to take effect posterior to an indefinite failure of issue, yet it may be done on a contingency that may happen within the before mentioned period. The principle is clearly established in *Lamb* v. *Archer*, 1 *Salk.* 228. Lord *Beauclerk* v. *Dormer*, 2 *Atk.* 308. and *Huges* v. *Sayer*, 1 *P. Wms.* 534. Vid. 2 *Fearne on Cont. Rem.* 79. 279. 281. 473. 490. To the same effect are numerous other determinations. *Target* & al. v. *Gaunt* & al. 1 *P. Wms.* 432. *Forth* v. *Chapman*, 1 *P. Wms.* 664. *Pleydell* v. *Pleydell*, 1 *P. Wms.* 748. *Pinbury* v. *Elkin*, 1 *P. Wms.* 564. *Sheffield* v. Lord *Orrery* & al. 3 *Atk.* 282. *Atkinson* v. *Hutchinson*, 3 *P. Wms.* 258. *Sabbarton* v. *Sabbarton* & al. *Talbot's Ca.* 245. *Read* v. *Snell*, 2 *Atk.* 646. A number of the cases are precisely like the one before the Court, that is, a limitation over after an estate in fee, on the happening of the specified contingency of a dying without issue. I will particularly refer, at some length, to one case only, that is, *The executors of Moffat* v. *Strong*, 10 *Johns. Rep.* 12. in which a very learned opinion is given, by the late Ch. J. *Kent. Moffat*, by his last will and testament, gave to his sons the residue of his *personal estate*, after making certain specific devises and bequests, and then provided, if any of them should die without lawful issue, his part should go to the survivors. To one of them a *sealed note* was distributed ; and on his death leaving no issue, a question as to the property in the above note arose between the executors of the testator and the assignee of the deceased son. It was adjudged, by the court, that as the limitation over was to the survivors, it could not be intended to be on the dying without issue generally, and that the limitation, by way of executory devise, was valid. A case more in point to the one under discussion, it would be difficult to imagine.

There exists no doubt that Mrs. *Wadsworth* and Mrs. *Silliman* have an interest in the property in question, by way of contingent remainder in the real estate and the substituted avails of it, and by way of executory devise in the bank stock.

2. Whether the security demanded ought to be given, and the suit at law enjoined, are the only remaining enquiries. It was a rule anciently established, that the person entitled to a

remainder in personal estate might call for security from the *Hartford,* tenant for life, that the property should be forthcoming at his *June, 1831.* decease. 2 *Freem.* 206. (case 280.) But in *Foley* v. *Burnell,* 1 *Bro. Chan. Rep.* 279. this practice was overruled, by Lord *Thurlow,* unless there were danger of loss. Security may still be required in a case of real danger that the property may be wasted, secreted or removed. 2 *Fearne on Exec. Dev.* 35. *Mortimer* v. *Moffat* & ux. 4 *Hen. & Munf.* 503. That in this case the requested security ought to be given, is perfectly unquestionable. The irresponsible condition of *Hudson* and his contemplated removal to a great distance, render the peril of utter loss extremely imminent.

Hudson *v.* Wadsworth.

In respect of the action on the administration bond, an injunction against it ought to be decreed. The defendant, *Wadsworth,* has ever been willing to deliver over the property, on a compliance with the reasonable and equitable condition of security against loss. The action is an effort, virtually, to obtain, without security, that property, which, in my opinion, ought not to be required, unless on security given.

DAGGETT and PETERS, Js. were of the same opinion.

WILLIAMS, J. gave no opinion, having been consulted on the construction of the will. BISSELL, J. was absent.

Original bill dismissed.
Decree for plaintiff in cross-bill.