St. John, Admr., *v.* Dann et al.

SELLECK Y. ST. JOHN, ADMINISTRATOR, *vs.* GEORGE L. DANN ET AL.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

By his will a testator gave to his three children *G*, *C* and *P*, to be divided equally between them, all his property real and personal, subject however to his widow's use for life of the homestead and furniture and one third part of the residue. The fourth clause of the will then provided that *G's* portion should be held by trustees for the use and benefit of *G* "and his family" until *G* should discharge "his present liabilities," at which time the trustees were directed to transfer to him all of his portion then remaining in their hands. The fifth clause directed that if *C* or *P* "should die without issue," the portion of the one or both so dying should go in fee to the children of *G*. At the date of the will *G* was married and he was living at the date of the testator's death, with a wife and children. *C* and *P* married after the testator's decease and each had issue born of the marriage. *C* died after the testator, leaving a widow and two children. In a suit to determine the validity and construction of the will it was *held*:—

1. That by the term "family," in the trust established for *G* and his family, the testator must be understood to have meant the family of which *G* was and remained the head; in which case the trust would not be a perpetuity at common law, since it would cease at his death. Also that as "family" was not a word which had a definite and invariable meaning, it ought to be construed in view of the presumption that the testator intended to create a legal trust rather than one void for remoteness under our statute; and so construed it embraced *G's* wife and children but did not include any person who was not either in being at the death of the testator, or the child of such person.

2. That by "present liabilities" were meant those existing at the date of the will, and that when those were discharged, either by *G* or by his

VOL. LXVI—26

trustee in insolvency (*G* having been duly adjudged an insolvent since the testator's death), the title of *G* to the trust fund would become absolute in him.

3. That inasmuch as the trust for *G* and his family was an entire and inseparable one, and the fund constituted but a moderate provision for their support, neither the principal nor income of the fund, during the continuance of the trust, could be taken by, or appropriated to, *G's* creditors.

4. That the provision that if either *C* or *P* " should die without issue " the share of the one so dying should go to *G's* children absolutely, created an estate tail in the real estate by implication in the first donees, with a contingent remainder to the children of *G*, dependent upon the death of one or both of the first donees without leaving surviving issue, and also an interest in the personal property, by way of executory devise.

5. That upon *C's* death, his portion of the estate, both real and personal, including that in which the testator's widow had an estate for life, became an absolute estate in fee simple in his surviving issue, by force of § 2952 of the General Statutes, subject to his widow's right of dower in the real estate, or in the proceeds derived from its sale by order of court; the title of such surviving issue being by inheritance from the donee in tail and not by purchase under the will, and hence not offending the statute against perpetuities.

6. That upon *C's* death his interest in the personal estate of the testator became absolutely extinguished, and *C's* widow was not entitled to any statutory share therein.

Every limitation over by way of an executory devise is inconsistent with any right on the part of the first taker to alienate or incumber the property, as against those who may be entitled to succeed thereto upon the termination of his estate.

In the construction of wills an entailment for the benefit of grandchildren may be implied, where none might be, if the remainder-men were distant relatives.

Property constituting the principal of an estate tail is unalterably limited to descend to the heirs of the body of the first donee in tail, and cannot be taken by his creditors.

The question whether the words " dying without issue " or equivalent expressions, refer to the occurrence of the death of the first taker without issue before or subsequent to the death of the testator, is always one to be determined in view of all the provisions of the particular will and of the circumstances surrounding the testator.

[Argued June 5th—decided June 22d, 1895.]

Suit to determine the construction of the will of Charles E. Dann, of New Canaan, deceased, brought to the Superior Court in Fairfield County, and reserved by that court, *Robinson, J.,* upon the facts found, for the consideration and advice of this court.

The case is sufficiently stated in the opinion.

*Homer S. Cummings,* for Selleck Y. St. John, administrator, and George L. Dann, Mary W. Dann, and their children.

*Alfred E. Austin,* for Mary A. Dann and her children, Horace H. Dann and Wilbur E. Dann.

*John J. Walsh,* for Henry Stein, and Peter Mead, trustee of the insolvent estate of George L. Dann.

*John H. Light,* for George D. Nichols, Phebe Jane Nichols, and their children.

BALDWIN, J. Charles E. Dann, the testator, died in 1876, leaving a widow, and three children. His will gave the widow a life estate in his homestead and the furniture therein, and then proceeded as follows:—

" At her death the property, the use of which is so given and bequeathed to my wife, I give, devise and bequeath to my children, George L. Dann, Charles S. Dann and Phebe Jane Dann, to be equally divided between them. I also give and bequeath to my wife, Mary Jane Dann, the use and improvement of the one-third of the residue of my estate during her lifetime—the same to become at her death the absolute estate of my said children—to be equally divided between them.

" Third. All the rest and residue of my estate—real, personal and mixed—wherever situate—I give, devise and bequeath to my said three children to be equally divided between them share and share alike.

" Fourth. The portion of my estate so hereinbefore given, devised and bequeathed to my son George L. Dann, is to be held by my executors, whom I hereby appoint as trustees for that purpose. I give, devise and bequeath to them as such trustees and to the survivor of them, such portion—to be held by said trustees or the survivor of them in trust for the use and benefit of the said George L. Dann and his family

until the said George L. Dann shall discharge his present liabilities by payment, compromise or otherwise—when the said trustees are hereby authorized, empowered and directed to transfer and convey to the said George L. Dann all of such portion as shall then be remaining in their hands or possession or in the hands and possession of either of them.

"Fifth. It is my will and I hereby order and direct that if my said son Charles S. Dann, or my daughter Phebe Jane Dann, should die without issue—the portion or portions so hereinbefore given, devised and bequeathed to them or to either of them so dying without issue, shall go to the children of said George L. Dann to be their own absolutely."

George L. Dann was married prior to the date of the will, and was living at the testator's decease, with a wife and children.

It is made a question in the case whether the fourth article in the will is not void as creating a perpetuity.

It does not violate the common law rule against perpetuities, for the trust established could not endure beyond the life of George L. Dann. It was to be for the use of him "and his family," until he should discharge certain specified liabilities, upon which event the trustees were to convey to him whatever might then remain in their hands. He was the primary object of the testator's bounty, and the word "family," as thus used, must be understood to mean the family of which he was and remained the head. *Smith* v. *Wildman*, 37 Conn., 384. By his death it would be dissolved, and the surviving members would have no further interest in the fund.

Nor is the fourth article in contravention of our statute against perpetuities, General Statutes, § 2952, on the ground that the "family" to be benefited might by possibility comprehend one who was neither a person in being at the death of the testator, nor the child of such a person, because George L. Dann might marry such an one for his second wife, in case of the decease of the wife who was living when the will was made and the testator died. It is true that such an event is not impossible, and that, should it occur, the second wife

could not, by reason of the statute, receive any benefit from the fund. It is also true that the general intent of the will would be best carried out, in case of a second marriage, by admitting the second wife to share in the use of the trust estate. The testator must certainly have meant that if, after his decease, children were born to George, they should be considered members of his "family"; and it would seem a strained construction to hold that the only wife who could be benefited by the trust was the one to whom he was married at the date when the will was made or went into effect. *Cheshire* v. *Burlington*, 31 Conn., 326, 329. But it is not to be presumed that any one intends to violate the law, by the use of language which may be so read as to be entirely in harmony with it. *Martelli* v. *Holloway*, L. R. 5 H. L. 532. " When the expression which a testator uses is really ambiguous, and is fairly capable of two constructions, one of which would produce a legal result, and the other one that would be bad for remoteness, it is a fair presumption that the testator meant to create a legal rather than an illegal interest." Gray on Perpetuities, § 633. The term " family " is not one which has a definite and invariable meaning. In its widest sense, it may be used to include the domestic servants employed in the household. *Wood* v. *Wood*, 63 Conn., 327. If the word had been followed in the will by a proviso that it should not be deemed to include any person except such as were in being at his decease or children of such persons, it is clear that no perpetuity would have been created. We are of opinion that the law, in effect, supplies such a limitation. The provision for his son's family is to be construed as referring only to such members of it as may legally participate in the testator's bounty. *Downing* v. *Marshall*, 23 N. Y., 366, 374.

It follows that the ultimate and absolute title to a third part of the testator's residuary estate, including the remainder on the determination of the life estate given to his widow, became vested as soon as the will took effect, in George L. Dann in fee-simple, subject only to the terms of the trust. He was adjudicated an insolvent debtor by the Probate

Court for the District of Norwalk, in 1891, and this title thereupon passed to his trustee in insolvency.

It does not appear upon the record whether George L. Dann has ever discharged what the testator described as "his present liabilities." These words must be taken to refer to his liabilities existing at the date of the will, rather than to those which might exist at the date of the testator's decease. It is an equivalent expression to "his liabilities existing at the present time." The testator was evidently referring to an indebtedness which he then knew to exist; not to a further indebtedness in which his son might by possibility become thereafter involved. So long as any of the indebtedness which he described exists, and so long only, the possession of George's portion must remain in the trustee under the will. Should such indebtedness be discharged, either by George L. Dann or the trustee in insolvency, the title of the latter to the fund would immediately become absolute.

These provisions of the will were valid, whether designed to induce George L. Dann to effect a speedy settlement with his creditors, or to secure, as against them, a means of support for him and his family. The testator's whole estate amounted to about $18,000 in value. He was under no obligation to provide for his son's debts, and he could lawfully prefer the latter's family to his creditors. The trust for the different members of this family is an entire and inseparable one, and the fund was but a moderate provision for their support. The debts of the father could in no event be satisfied out of what was left for the support of his wife and children, and the courts will not undertake to sever his portion from theirs. *Tolland County Insurance Co.* v. *Underwood*, 50 Conn., 493, 496.

Should George L. Dann survive his wife and children, and be at any time living without a family about him to constitute a household, the trust, as regards the income of his portion, would during such time become so far a naked one that, unless it has been protected by the will against his creditors, it would be subject to their demands. *Johnson* v.

*Connecticut Bank*, 21 Conn., 148. As this state of things has not arisen, and probably never will arise, we think it unnecessary to consider the questions of law which its occurrence might present.

The provision that if either Charles S. Dann or Phebe J. Dann "should die without issue," his or her share should go to the children of George absolutely, created an estate tail by implication. *Turrill* v. *Northrop*, 51 Conn., 33.

The old English rule was that a limitation over, if the first devisee should die without issue, created an estate tail by implication only if an indefinite failure of issue was intended. That such was the testator's intention was, however, presumed, if the first devise were made either in fee, or for life, or generally, without any particular limit as to its duration. *Machell* v. *Weeding*, 8 Sim., 4. The courts of this State, while adopting the same rule, have not admitted the existence of the presumption upon which it was based by English law. On the contrary, they have always construed the words " dying without issue," if not otherwise explained by the context, as referring to a dying without leaving issue living at the time of such death. *Hudson* v. *Wadsworth*, 8 Conn., 348, 360. This difference between the views of the English courts and those of Connecticut is, no doubt, attributable to the effect of an ancient principle in our jurisprudence, confirmed by the statute of 1784 (General Statutes, § 2952), that an estate tail becomes an estate in fee-simple in the issue of the first donee in tail. 1 Swift's Dig., *479. Under this rule, a strict limitation in tail, to endure from generation to generation, was impossible, and an attempt to constitute it was therefore not to be presumed.

There is no difference between the common law of England and that of this State in reference to the creation of a remainder after an estate tail in land. An estate tail is a particular estate, which, when carved out of an estate in fee-simple, leaves something remaining, which is a proper subject of immediate disposition. *Hall* v. *Priest*, 6 Gray, 18, 20. A devise in tail might be followed, at common law, by a devise in remainder, contingent upon the death of the de-

visee in tail without leaving issue surviving him at the time of his decease. This simply prescribed a particular mode for the determination of the estate in tail. *Ex Parte Davies*, 2 Sim. (N. S.), 104, 9 Eng. Law & Eq., 88, 91.

Our statute of perpetuities avoids a devise to the heirs of the body of any person in being; since such heirs at his decease may not be his children, and children only are the "immediate issue or descendants" intended by that law. *Leake* v. *Watson*, 60 Conn., 498. For the same reason, it would avoid a limitation over, dependent upon such an estate. But the creation of an estate tail does not invest the issue of the donee in tail, though such issue may be in being, with any interest in the land. If they ever take, it will be by inheritance from their ancestor, and not by purchase under the will. *Goodman* v. *Russ*, 14 Conn., 210, 216. This title by descent, upon the death of the ancestor, is enlarged into a fee-simple, by our statute; but not until then. *De Mill* v. *Lockwood*, 3 Blatchf., 56, 63; *Comstock* v. *Gay*, 51 Conn., 45. It differs, therefore, radically from a conditional estate in fee, with an executory devise over in fee-simple, in case of the failure of issue of the first devisee. That, under our law, which recognizes no right in the tenant in tail to bar the entail, by common recovery or otherwise, would present a plain case of a perpetuity; since the first estate devised would be determinable by an indefinite failure of issue, occurring, perhaps, after the lapse of many successive generations of those not in being at the death of the testator. 2 Redfield on Wills, *569.

The changes in English law by modern statutes, particularly the Wills Act of 1 Vict., Chap. 26, have been such that the more recent decisions of their courts can throw little light on any question affecting estates tail in Connecticut. In England the creation of such estates by implication is now practically precluded, and a limitation over upon the death of the first taker without issue, ordinarily gives him an estate in fee-simple, subject to an executory devise, should he die leaving no surviving issue. 2 Jarm. on Wills (5th Am. Ed.), *144.

In our opinion, by the settled law of this State, the children of George L. Dann took an interest in the real estate of the testator devised to Charles S. Dann and Phebe J. Dann, respectively, by way of contingent remainder, dependent upon the decease of the first taker without leaving surviving issue ; and in the personal estate left to each, by way of executory devise. *Hudson* v. *Wadsworth,* 8 Conn., 348, 362 ; *Williams* v. *McCall,* 12 Conn., 328 ;. *Smith* v. *Pendell,* 19 Conn., 107. In a certain sense this remainder might be regarded as vested, since the remainder of the fee-simple, after carving out the fee-tail, passed from the testator at his decease to the remainder-men. Hawkins on the Construction of Wills, \*221. But as the limitation over is, in substance, to certain persons, on an uncertain event, and by force of our statute the will gives a fee-simple to the issue, if any, who may survive the donees in tail, we prefer to adhere to the phraseology used in our previous decisions and denominate the estate a contingent one. At the date of the will and of the testator's decease, both Charles S. Dann and Phebe J. Dann were unmarried. Should they die without leaving surviving issue, he wished their portions to go to his grandchildren by his son George. This was a natural order of succession, and an entailment operating for the benefit of grandchildren may well be implied, where none might be, if the remainder-men were distant relatives. *Bullock* v. *Seymour,* 33 Conn., 289, 294.

A limitation over, " in case of " or " in the event of " the death of a devisee without issue, or even " if he die without issue," has often been construed to refer only to the occurrence of the death under such conditions before that of the testator. *Coe* v. *James,* 54 Conn., 511, 513. But the question is always one to be determined in view of all the provisions of the particular will under consideration, and the circumstances surrounding the testator. Had Charles S. Dann died without leaving surviving children, before the testator, and had that been the contingency upon which his portion was to go to George's children, the effect of the will would have been to leave his sister Phebe with but one third of the

estate, and to give two thirds to George and his children. This would obviously contravene the general scheme of the will, which contemplated a division originally equal between the different stocks.

Charles S. Dann and Phebe J. Dann each married after the testator's decease, and had issue born of the marriage. The former was adjudged a bankrupt under the laws of the United States, in 1878, and all his estate was thereupon conveyed to an assignee in bankruptcy, "including all the property of whatsoever kind, of which the said bankrupt was possessed, or in which he was interested, or which he was entitled to have." His mother was then living, but died two years later. His third of that part of the estate, in which she had no interest, had been distributed to a trustee for his benefit prior to his bankruptcy. His interest in that part of the estate in which she had an interest was duly sold and conveyed, in 1880, by his assignee in bankruptcy, his wife being the purchaser. In 1886 he died, leaving surviving issue.

Charles S. Dann, being a tenant in tail, could convey the entailed estate, but could at most grant nothing more than a base fee, determinable upon his decease by the entry of the issue in tail. *Whiting* v. *Whiting*, 4 Conn., 179. His wife by her purchase acquired a right to the enjoyment, during such period as might elapse between his mother's decease and his own, of his third of so much of his father's estate as was left by the latter to his widow for her life.

Upon his decease, in 1886, his portion of his father's estate, both real and personal, including that in which the latter's widow had an estate for life, and an interest in which afterwards passed to his own wife, became an absolute estate in fee-simple in his surviving issue. General Statutes, § 2952. His estate, under our law, was an estate tail, both in the real and personal estate. *Hudson* v. *Wadsworth*, 8 Conn., 348, 362. All the real estate left by his father has been sold, either by authority of the General Assembly, or by order of the Court of Probate. The proceeds of such sales in the hands of the administrator are to be treated as real estate, in determining the rights of the parties entitled to share in them.

*Hudson* v. *Wadsworth*, *supra.* The widow of Charles S. Dann is entitled to her dower in them, unless she has been otherwise provided for by jointure or will. 1 Swift's Dig., *87. The assignment by the register in bankruptcy could not have the effect of barring dower, for it conveyed only what the bankrupt might lawfully assign. It cannot be considered as standing on the same footing with a warranty deed from a tenant in tail, purporting to convey the estate in fee-simple. *Whiting* v. *Whiting*, 4 Conn., 179.

The widow was not entitled to any statutory share, if her husband died intestate, in his portion of the personal estate left by his father, for upon his death his interest in that became absolutely extinguished. Every limitation over by way of an executory devise is inconsistent with any right on the part of the first taker to alienate or incumber the property, as against those who may be entitled to succeed upon the termination of his estate.

The principal of the portion of the testator's estate (both real and personal) which he left to Phebe J. Dann, was vested in her as a tenant in tail, and cannot be taken by her creditors. If she die leaving surviving issue, it will belong to them; if she die leaving no surviving issue, it goes to the children of George L. Dann.

One of her creditors, Henry Stein, has put his claims into judgments, and is seeking to secure them by process of foreign attachment, served on the administrator with the will annexed of the estate of Charles E. Dann. The principal of her portion cannot by this or any other method be appropriated to the payment of her debts. It is unalterably limited to descend to the heirs of her body, or, on failure of such issue, to go to the children of her brother.

The Superior Court is advised that (1) the fourth clause of the will of Charles E. Dann is valid in all respects; (2) the interest of George L. Dann, under said clause, and also under the second clause, was an absolute estate, subject to a trust for the use and benefit of him and his family until the discharge of all the liabilities which existed against him at the date of the will; (3) the "family" thus described

includes the wife and children who may, from time to time, be members of his household, during his life, not including any person who either was not in being at the date of the testator's decease, or was not the child of a person then in being; (4) said trust will cease upon his death, or upon a prior discharge of all said liabilities; (5) his interest in all said property, subject to said trust, has become vested in his trustee in insolvency; (6) so long as said trust remains an active one, neither his trustee in insolvency, nor any of his creditors can appropriate any part either of the principal or income of said property; (7) the purchase of Mary E. Dann from the assignee in bankruptcy of Charles S. Dann gave her only the right to the use and profits of his interest in that part of his father's estate which was subject to his mother's life estate, from the date of the latter's decease until his decease; (8) his interest in every part of his father's estate was an estate tail, and the real estate, or the proceeds of the real estate when sold, were subject to the dower rights of his widow; (9) she took, if he died intestate, no statutory share in the personal estate so entailed; (10) said entailed estate, subject to said right of dower in the proceeds of the real estate, became, upon his decease, the absolute property of his surviving issue, in fee-simple; (11) Phebe J. Nichols, in like manner, took an estate tail under said will, both as to the real and personal estate, and said estate was not enlarged by the birth of issue, and the principal thereof cannot be taken for the payment of her debts; and (12) Henry Stein was not entitled to have paid over to him so much of the estate now held by the administrator with the will annexed, as garnishee, as might be sufficient to satisfy the judgments in favor of said Stein, recovered in 1892, against her and her husband, nor will the administrator be holden as garnishee, in the pending suits by said Stein upon said judgments, to pay over any part of the principal sum of such entailed portion of Phebe J. Dann.

In this opinion the other judges concurred.