THE THAMES BANK AND TRUST COMPANY, TRUSTEE (UNDER WILL OF ELIZABETH F. LUSK) *v.* ARTHUR G. ADAMS ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued June 8—decided July 12, 1939.

*Arthur M. Brown* appeared for the plaintiff but did not argue the cause.

*Henry H. Pettis,* for the named defendant et als.

*Arthur F. Libby,* for the defendant William H. Adams, Jr., as an individual and as administrator.

JENNINGS, J. The parties are not in dispute as to the interpretation of this will and no sufficient reason appears for this reservation. An unappealed judgment of the Superior Court is conclusive of the issues involved. *Greenwich Trust Co.* v. *Brixey,* 117 Conn. 663, 664, 166 Atl. 918.

Elizabeth F. Lusk died in Norwich on March 3, 1875, leaving as her only heirs-at-law a son, William T.

Lusk, and two grandchildren, William Hunt Adams and Arthur Graham Adams, children of a deceased daughter, Mary Lusk Adams. Her son has died leaving children and grandchildren. Her grandson William Hunt Adams has died leaving one son, William Hunt Adams, Jr. Her grandson Arthur Graham Adams is still living and has six living children. Her will was dated October 10, 1874, and was duly admitted to probate. That portion of the first paragraph on which our advice is sought reads as follows:

"All the rest and residue of my estate including all real and personal property except the personal effects aforesaid, I devise and bequeath to my son William T. Lusk and to the children of my deceased daughter, Mary, wife of J. Hunt Adams, in two equal shares, the one share to my son and the other share to my grandchildren aforesaid. I direct my Executors to pay over the share thus willed to these grandchildren, to William T. Lusk and William Walter Phelps as trustees to hold the same and pay over the annual interest and profits of the same, to them, to wit:

"William Hunt Adams and Arthur Graham Adams share and share alike, in the event of the death of either brother leaving no issue him surviving, I will and direct that his share become the property of the surviving brother, and that in the event of both brothers leaving no issue surviving them or either of them that their shares become the property of my son, William T. Lusk."

By an additional stipulation, William Hunt Adams, Jr., was described as administrator of his father's estate as well as individually. The plaintiff is successor trustee. The principal issue raised by the questions propounded in the stipulation for reservation is as to the disposition of the share of either of the grandchildren upon his death.

The leading feature of this will is an intent to divide the residuary estate of the testatrix equally between her son, and the two sons of her daughter and their children, per stirpes. Under such circumstances the courts lean to a construction which will carry out the manifest intent of the testatrix. *Daboll* v. *Daboll,* 101 Conn. 142, 150, 125 Atl. 253. The ambiguity arises because of the gift over, effective only on certain contingencies which have not occurred and which are extremely unlikely to occur.

It is first suggested that the testatrix intended a direct gift to her grandsons. This is based on the familiar rule thus expressed in *Hull* v. *Hull,* 101 Conn. 481, 486, 126 Atl. 699: "A fundamental and unvarying rule of construction forbids the cutting down of an express and positive devise in fee, or bequest absolute in terms, in one clause, to an inferior or lesser estate by another clause, unless the second clause expressing the lesser estate indicates a clear intention that the greater estate shall be cut down to the lesser estate. That intention can only be found when the lesser estate is expressed in positive terms and in language which is unambiguous and incapable of any but the one meaning." *Peyton* v. *Wehrhane,* 125 Conn. 420, 426, 6 Atl. (2d) 313. The terms of this will are sufficiently definite to bring the case within the exception. The grandchildren are to enjoy only the income of the fund during their lives. The will provides that in the event of the death of either brother without issue surviving "his share become the property" of the person entitled to receive it. The intention to cut down the absolute gift to a lesser estate in the contingency specified is clear. *Plaut* v. *Plaut,* 80 Conn. 673, 677, 70 Atl. 52; *Simmons* v. *Simmons,* 99 Conn. 562, 567, 121 Atl. 819.

The next suggestion is that the gift is of a life estate

in the grandsons with a remainder by implication in their issue. Since their issue might be persons other than immediate descendants, this construction would violate the Statute against Perpetuities in force at the time the will was made, quoted in the footnote.[1] *Warren* v. *Duval,* 124 Conn. 448, 452, 200 Atl. 804. " . . . when a provision in a will is fairly open to a construction which will avoid the creation of an illegal perpetuity, such an interpretation should be adopted in preference to one which would render nugatory the intent of the testator." *Bridgeport-City Trust Co.* v. *Alling,* 125 Conn. 599, 604, 7 Atl. (2d) 833.

A third construction more nearly meets the precise situation and has ample support in precedent. The gift was to the grandsons but if they died without issue, then over. Such a gift has been uniformly construed as an estate tail by implication unless this result is inconsistent with the manifest intent of the testator. *Chesebro* v. *Palmer,* 68 Conn. 207, 211, 213, 36 Atl. 42; *Mahoney* v. *Mahoney,* 98 Conn. 525, 535, 120 Atl. 342. The history and incidents of this estate are fully developed in *Rudkin* v. *Rand,* 88 Conn. 292, 91 Atl. 198, and many Connecticut precedents are cited at the bottom of page 297. Of these *Turrill* v. *Northrop,* 51 Conn. 33, resembles the case at bar as closely as one will case can resemble another, except for the fact that the property consisted of land while here it included personalty. The same principle applies to personalty as to realty. *Hudson* v. *Wadsworth,* 8 Conn. 348, 362; *St. John* v. *Dann,* 66 Conn. 401, 410, 34 Atl. 110; *Horton* v. *Upham,* 72 Conn. 29, 30, 43 Atl. 492. The pro-

---

[1] "No estate in fee simple, fee tail, or any less estate, shall be given, by deed or will, to any persons but such as are, at the time of making such deed or will, in being, or to their immediate issue or descendants; and every estate, given in fee tail, shall be an absolute estate in fee simple, to the issue of the first donee in tail." Revision of 1875, p. 352, § 3.

vision for placing the property in trust during the lives of the grandsons merely had the effect of holding the corpus of the estate intact until the contingency of the grandsons dying without issue was determined. The Statute against Perpetuities in terms provides against the invalidation of an estate tail by making it an estate in fee simple in the issue of the first donee in tail and this effect of the creation of a fee tail is retained to the present day. General Statutes, § 5001. He takes, not by purchase under the will, but by inheritance from his ancestor. *St. John* v. *Dann,* supra, 408. Indeed, as far as personality is here involved, the ownership would become absolute in the issue of the first donee in tail even in the absence of statute. *Hudson* v. *Wadsworth,* supra; 21 C. J. 933.

The remaining question is whether, assuming that an estate in fee tail has been created in a person in being, the issue of the first donee in tail must be the immediate descendant of that person. The case of *Welles* v. *Olcott,* Kirby 118, was decided by a court on which sat the two men who prepared the Revision of 1784. *Warren* v. *Duval,* supra, 456, note. That case was a devise to the testator's daughter and the heirs of her body forever. This was held to be a fee tail and the court said, "A limitation in tail, so far as related to the first donee in tail, might be for very good reasons; and it does not interfere with the policy of law, like perpetuities, or more than any life estate; And that the late statute, admitting limitations in tail, as relative to the first donee, might well be considered as in affirmance of the common law." See also *Chappel* v. *Brewster,* Kirby 175; *Hamilton* v. *Hempsted,* 3 Day 332. Fee tails are excepted from the statute whether or not confined to the "immediate issue" of the first taker.

The issue of the first donee in tail in the case of

William Hunt Adams is his son, William Hunt Adams, Jr. The identity of the issue of the first donee in tail in the case of Arthur Graham Adams cannot be known until his death, which has not occurred. *St. John* v. *Dann,* supra, 408. Furthermore, his death without issue surviving is not an impossibility.

No question is made as to the divisibility of the trust fund so as to make one-half available to William Hunt Adams, Jr., at this time. The purpose of making the trust divisible appears to have been in the mind of the testatrix, for she provided that in case of the death of one grandson without issue "his share become the property of the surviving brother." The same words were used with reference to the final disposition of the fund in the event of both grandsons dying leaving no surviving issue. This provision indicates an intent that there should be an immediate transfer on the happening of the contingency. One-half of the trust fund had absolutely vested in William Hunt Adams, Jr., and no purpose would be served by continuing the trust of the entire property during the life of the other grandson. We hold that under these circumstances the trust was divisible.

The answer to questions a and b, inquiring whether William Hunt Adams, Jr., is entitled to one-half of the principal of the trust fund and to one-half of the income thereon since the death of his father, is "Yes." The answer to question c, as to the invalidation of the gifts over by the Statute against Perpetuities, is "No." As to question d, the income of the other half of the trust fund should be paid to Arthur Graham Adams during his life. Question e cannot be answered at this time.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.