LYMAN T. TINGIER, ADMINISTRATOR, *vs.* JAMES F. CHAMBERLIN, EXECUTOR.

First Judicial District, Hartford, January Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A devise or bequest which might possibly go to the issue or descendants of persons unborn at the death of the testator, has for nearly seventy years been uniformly held to be in violation of the statute against perpetuities (§ 2952, repealed in 1895); and this construction must now be regarded as a rule of property and no longer open to doubt or question. (*One judge dissenting.*)

A testatrix, authorized by her husband's will which took effect in 1879, gave the residue of his estate, and also the greater part of her own property, in trust for the use and support of her son during his life, and at his death to those persons who were then his natural heirs at law. Her will was made in 1879 and took effect in 1884. *Held* that the disposition to the heirs at law of the son contravened the statute of perpetuities then existing (§ 2952), and was void.

Argued January 4th—decided March 9th, 1899.

SUIT to determine the validity and construction of the will of Eunice Chapman of Vernon, deceased, brought to the Superior Court in Tolland County and reserved by that court, *George W. Wheeler, J.,* upon a finding of facts, for the consideration and advice of this court.

The facts found in the present case are substantially the same as those stated in 70 Conn. 363, when, in another phase of it, this case was before this court; and for the purposes of this case it is unnecessary to recite them here at length.

The plaintiff is administrator *de bonis non* with the will annexed, both upon the estate of Eunice Chapman and upon the estate of Elijah S. Chapman, her husband. Elijah S. Chapman died in March, 1879, leaving a will, the material portions of which were as follows: —

"*Second:* I give, devise and bequeath unto my beloved wife, Eunice Chapman, the use and improvement, rents, profits and income of all my estate, real and personal, and wheresoever the same may be situated, to her during her nat-

ural life. *Third :* I give, devise and bequeath all my said estate, at the decease of my said wife, unto such person or persons, and in such shares or portions, as my said wife, Eunice Chapman, by her last will and testament, duly executed, shall name, designate and appoint (provided she shall not give the same to Otis and Ambrose D. Snow, or either of them), to them and their heirs forever."

He left surviving him Eunice, his widow, and three children, Adeline, wife of Ambrose Snow, Mary, wife of Otis Snow, and Doremus.

Eunice, the widow, died in April, 1884, leaving a will, in which she gave all the estate of her husband of which she had the power to dispose under his will, and all her own estate, to a trustee in trust to pay over the net income to her son Doremus during his life, with power in the trustee to appropriate and apply, in his discretion, so much of the principal of the trust estate for the purposes of the trust, as he should deem necessary. The trust estate that might remain at the death of Doremus she disposed of as follows: —

" *Fourth :* If, upon the decease of my said son, Doremus D. Chapman, any portion of said trust estate shall be remaining in the hands of said trustee, undisposed of, I authorize and direct said trustee to distribute, transfer and convey all said remaining estate, absolutely to such persons as would then be entitled to the same as heirs-at-law of the said Doremus D. Chapman, if said estate belonged to him, under the statute laws of the State of Connecticut then in force, if the same were intestate estate, that is to say: said trustee shall distribute said estate as aforesaid, to those persons who are the natural heirs-at-law of my said son at the time of his decease."

She left surviving her the three children aforesaid, and three grandchildren, children of her daughter Mary, all of whom with the exception of her son Doremus are now living.

Doremus, after the death of his mother, married, and subsequently, in December, 1896, died without ever having had any child born to him. He left a widow, who is still living, and a will by which he gave her all of his estate. The duly qualified executor of his will, and his widow, are parties to this suit.

The trust estate, the life use of which was given to Doremus, consisted of the estate of his father Elijah S. Chapman, and the estate of his mother Eunice Chapman, including both real and personal estate ; and what remained of both of said estates is now in the possession and control of the plaintiff, to be disposed of according to law.

The complaint sets forth several questions concerning which it is alleged that the plaintiff is in doubt, but they may all be resolved into this single question, namely, whether the disposition of what remains of these estates, after the death of Doremus, contained in the will of Eunice Chapman, does or does not contravene the provisions of the statute of perpetuities in force when her will took effect in April, 1884.

*Lewis Sperry* and *Charles Phelps*, for Mrs. Otis Snow and Mrs. Ambrose Snow.

*William W. Hyde* and *Joel H. Reed*, for Mrs. Ella H. S. Chapman.

TORRANCE, J. Under the will of her husband, Mrs. Eunice Chapman had the power to dispose by will of the remainder of her husband's estate, after her life use thereof, to such persons, except Otis and Ambrose D. Snow, and in such portions, as she pleased; and under the law she had the power, of course, to dispose of her own estate by will as she chose.

By her will she gave her son Doremus, through her trustee, the life use of the property belonging to both estates, and concerning this disposition of such property no question is made in the present case. She further provided in her will, that what remained of this property after the death of Doremus should go " to those persons who are the natural heirs-at-law of my said son at the time of his decease."

Whether this is a valid or a void disposition is substantially the only question in the case; and its validity must be determined by the law as it was when her will took effect in 1884. *Security Co.* v. *Snow*, 70 Conn. 288, 292. At that

time the statute against perpetuities (§ 2952, Rev. Stat. 1888) was in full force, though it has since been repealed. Public Acts of 1895, Chap. 249.

Under this statute, as construed by this court, the issue or descendants of persons unborn at the death of a testator cannot take under his will; and a gift, devise, or bequest, which may by possibility offend against the statute in this respect is void and of no effect. This has been the construction put upon the statute, whenever its construction has been before this court, for a period of nearly seventy years, from the decision in *Allyn* v. *Mather*, 9 Conn. 114, in 1832, down to that in *Security Co.* v. *Snow*, *supra*, in 1898. This uniform construction, for so long a period, has acquired the force of a fixed rule of property, and is no longer open to doubt or question. If a gift, devise or bequest offends against the statute as thus construed, it is void and of no effect. That the disposition here in question does thus offend against the statute, is clear beyond all question.

The testatrix used the words "heirs at law" of Doremus, not as meaning his children, but in their natural and proper sense, as including all those persons who shall be capable of inheriting from him or taking his property under the statute of distributions, if he died intestate. In the clause under consideration those who are to take are expressly and with great precision described as his heirs at law, in the strictly technical sense of those words, and there is nothing in any other part of the will which in any way qualifies or modifies this descriptive language. Under such a description, all of the property remaining, of both estates, may go to the issue or descendants of persons not in being when the testatrix died, and the gift over is therefore void.

The Superior Court is advised that the disposition made in the fourth clause of the will of Eunice Chapman, to the heirs at law of Doremus, is void; and that the property in the hands of the plaintiff belonging to the estate of Eunice Chapman, and to the estate of Elijah S. Chapman, is intestate estate, and is to be dealt with and disposed of as such.

In this opinion the other judges concurred, except HAM-ERSLEY, J., who dissented.

HAMERSLEY, J. (dissenting). The testatrix seeks to give her son the full benefit of her property, only restraining his power of alienation, so that at his death it shall go to his heirs. Such a devise is and always has been valid .under the common law of this State. *Larabee* v. *Larabee*, 1 Root, 555; *Hamilton* v. *Hemsted*, 3 Day, 332, 338; *Healy* v. *Healy*, 70 Conn. 467, 471. A devise to' a son for life and upon his death to his heirs, is one of the most natural and most common provisions made by will. To forbid such a devise is an unnatural and unjustifiable alteration of the law of property. It is said that such an alteration was made by a statute first enacted in 1784. No intimation of this result can be found in the language of the statute. It was passed in affirmation of the common law, to avoid perpetuities. Revision of 1784, p. 3; *Welles* v. *Olcott*, Kirby, 118; *Chappel* v. *Brewster*, ibid. 175; *Allyn* v. *Mather*, 9 Conn. 114, 130; 1 Swift's System, pp. 247, 248, 267. The meaning now attributed to it is in violation of the common law and subversive of the foundation on which the rule against perpetuities rests. For one hundred years this occult meaning remained undiscovered. Wills were made and approved, estates settled and distributed, in total ignorance of its existence; and in 1852 a gift to the heirs of a child was approved. *White* v. *Fisk*, 22 Conn. 31, 57. The first time it was clearly and necessarily invoked to defeat the expressed will of a testator, was in 1887. *Anthony* v. *Anthony*, 55 Conn. 256. The far-reaching effect of such a doctrine was first fully revealed to the profession in 1891 in *Leake* v. *Watson*, 60 Conn. 498. Doubtless the main portion of the general public is still in ignorance that the seemingly natural right of one to leave his property to a child and upon its death to its heirs, has been denied by a decision of this court. Since the first *obiter dictum* in 1876 (*Jocelyn* v. *Nott*, 44 Conn. 55, 59), the language used in several opinions may be cited as leading up to the doctrine of *Leake* v. *Watson*, and that case

has been followed in subsequent decisions; but in no case has this court given any reason for such a result, or even considered in the opinion the question of the true construction of the Act of 1784. The result rests on nothing more substantial than the unquestioning evolution of misunderstood or unfounded *dicta.* Immediately following *Leake* v. *Watson,* the legislature repealed the law to which judicial construction had given such an undreamed of meaning; and this in response to the practically unanimous demand of the profession. But the law is still operative as to a large number of wills, which must be interpreted under the law as it existed prior to the repeal. It is impossible to estimate the number of such wills; necessarily many will be brought before us for construction during years to come. The legislature could repeal the statute; it could not repeal the meaning imposed by the court on the statute a century after its enactment. This condition produces an unpleasant dilemma; we must make a choice of evils, either of which is to be deprecated. In the present case we must take one third of the property which the will of the testatrix has given to her daughters, and hand it over to strangers to her blood, or, in deciding this case we must give to the repealed statute a meaning different from that we have given it in deciding several prior cases; and a similar dilemma will be constantly presented to us for many years, until there is no longer a will affected by the repealed statute. This meaning given to the statute in former cases is not true; its announcement by the court was one of those occasional mistakes that are inevitable to any human tribunal. (An analysis of the cases would indicate quite clearly how unadvisedly it happened.) If the court is now satisfied of the mistake, why should it be repeated?

The rule of *stare decisis* is wise and salutary; it is based upon the supreme importance of certainty in the law; but there are instances where the necessities of truth and justice demand a modification of former decisions, especially where such decisions rest on *obiter dicta,* and the rule would be insufferable were it not for the power of the legislature to change any unwise or mischievous law. Here the legi

lature cannot act, and hence the peculiarity of this case. The mischief lies in a mistaken construction given by the court to a statute. For this reason the legislature repeals the statute. But that does not remedy the whole mischief; the statute must remain in partial operation for an indefinite time. The court will not apply a remedy because the doctrine of *stare decisis* says it is better for the legislature to change the law than for the court to change its decisions; and yet if the legislature should undertake to change the law, the court would declare its action void as an assumption of judicial power; and so the mischief with its attendant wrongs must have its way for perhaps half a century more. The situation would be ludicrous, if it were not so serious.

I understand my associates to be largely influenced by the claim that the decision in *Leake* v. *Watson* has become a rule of property, and therefore should not be modified. It seems to me manifest that the interpretation of the statute given in that case is not a rule of property in the sense indicated. If I thought such claim correct, I should find more difficulty in departing from our former decision.

I must accept my share of responsibility for a passive concurrence in some cases where the doctrine of *Leake* v. *Watson* has been accepted. The binding nature of that decision is now for the first time directly challenged. I think the challenge is well made. This is one of the rare instances where the maintenance of a line of decisions necessarily involves for future cases a constant repetition of obvious injustice. It is an evil to be compelled to acknowledge a mistake in recent decisions; but it is a greater evil to be compelled to repeat time after time a statement which we, in common with all the profession, know is not true, and time after time to take from the near relatives of a testator property which was in truth lawfully given to them and hand it over to strangers. We are compelled to choose between the admission of a patent error and the continuous repetition of a patent wrong. However disagreeable such choice may be, I cannot hesitate as to how it should be made.

I think the Superior Court should be advised that the gift in question is valid.