FREDERICK P. LEPARD, TRUSTEE, vs. ALLEN C. CLAPP
ET ALS.

First Judicial District, Hartford, May Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE AND THAYER, Js.

A testator who left a widow and five sons, gave her the net annual
income of a trust fund and directed that upon her decease such
income should be divided into five equal parts, one of which might
be paid by the trustee to each of the sons, "or to the legal rep-
resentatives of those, if any, who may have deceased, *per stirpes*,"
in case the trustee should be satisfied that it was needed for the
comfortable support of said son "or his family," and would not
be used in payment of any of his debts. The will then provided
that upon the decease of the last surviving son the trust should
cease, and the *corpus* of the fund be divided equally among the
issue of the sons *per stirpes*, the testator declaring that he gave the
fund "to the descendants of my said five sons *per stirpes* and to
their heirs and assigns forever." Two of the sons died before
their mother and one afterward, and two were still living. In
· a suit to construe the will it was *held:*—
1. That the gift over of the principal of the fund upon the death of the
   last surviving son, being one to descendants generally, to take
   effect at some indefinite time in the future, was void as con-
   travening the statute against perpetuities (repealed in 1895)
   which was in force in 1881 when the testator died.
2. That the attempted disposition of the income of the trust fund after
   the death of the widow, to the "legal representatives" of any
   deceased son, was also void, it being impossible to give to that
   provision any reasonable meaning, consistent with the obvious
   intent of the testator, which would avoid the prohibitions of the
   statute.
3. That inasmuch as an enforcement of the remaining provisions of
   the trust for the benefit of the two sons still living and the sur-
   vivor of them, would result in the complete overthrow of the testa-
   mentary scheme and utterly defeat the equality which formed
   the testator's main purpose and intent, the entire property given
   in trust, except the gift of income to the widow, must be treated
   as intestate estate and be administered and distributed as such.
Controlling weight should be given to the main purpose of a testator
   in interpreting and giving effect to the language which he has used
   in his attempt to express it.
The term "personal representatives," when used by a testator to de-
   scribe those whom he wishes to make beneficiaries of income in

place of one deceased, has no definite or certain meaning, and the sense in which the testator intended it to be used must therefore be gathered, if possible, from the language of the whole instrument, read in the light of the relevant circumstances existing at the time of its execution. And the same rule applies to the word "family" when similarly used.

Argued May 14th—decided June 5th, 1907.

SUIT to determine the validity and construction of the will of Caleb Clapp of Hartford, deceased, brought to and reserved by the Superior Court in Hartford County, *Case, J.,* upon a finding of facts, for the advice of this court:

When this case was reached for argument on May 8th, it appeared that no executor or other personal representative of the decedent was a party, whereupon the cause was remanded in order that an administrator *de bonis non c. t. a.* might be appointed and made a party.

Caleb Clapp of Hartford died February 15th, 1881, possessed of both real and personal estate, and leaving a will which has been duly probated. He also left surviving him a widow and five sons, his only children. By the will $1,000 was given to each son. All the residue of the estate was by item II converted into a trust fund and the widow given the entire income of it during her life. Items III and IV were as follows :—

"Item III. Upon the decease of my said wife, the net annual income of said trust fund shall be divided by said trustee into five equal parts semi-annually; and one of those parts may be paid to each of my five sons above named, or to the legal representatives of those, if any, who may have deceased *per stirpes,* in case the said trustee shall be satisfied that said part of said income is needed for the comfortable support of said son or his family, and will not be used in payment of any of his debts. Semi-annual income to be disposed of in this manner until all of my said five sons shall have deceased.

"Item IV. Upon the decease of my last surviving son, said trust shall cease, and the principal of said trust fund shall be equally divided to and among the issue of my said

five sons *per stirpes*, and I give and bequeath said fund to the descendants of my said five sons *per stirpes* and to their heirs and assigns forever."

Mrs. Clapp, the widow, died October 24th, 1899, having received the income of the fund to that date. One son, Willis M., died September 17th, 1884, and another, Howard S., October 16th, 1898. Each left a widow and one child, a daughter, who in each case was the sole heir at law of her father. The daughter of the first named son is married, that of the second unmarried. Whether or not these daughters reside with their mothers is not found. A third son, Henry P., died October —, 1906, leaving a widow, Lena B., with whom he had resided, but no child or representative of children. All of the widows of said three sons are now living. Two of the five sons survive. The plaintiff is the trustee of said fund. Other facts found need not be recited.

The following questions are propounded for advice :— "I. Is the said Lena B. Clapp, widow of said Henry P. Clapp, entitled to any part of the income which would be payable to her husband if living ? II. Should the preceding question be answered affirmatively, then what part of said income should be paid to her ? III. Should only a part of said income be paid to her, to whom should the remainder be paid ? IV. Should the principal of said estate be kept intact and the income only be paid until the death of the last surviving son of said Caleb Clapp, or is some part of the said principal now distributable ; and if so, what part and to whom ? V. Should it be answered that said principal should be kept intact until the death of said last surviving son, then to whom should it be paid upon the death of said last survivor ? "

*Charles M. Joslyn,* for the plaintiff.

*Charles Welles Gross,* for Lucy B. and Marjorie Clapp.

*William S. Pardee,* for Lena B. Clapp.

*Walter H. Clark*, for Ella J. C. Clapp.

*Warren B. Johnson*, for Allen C. and Arthur S. Clapp.

*Harry M. Burke*, with whom was *John A. Stoughton*, for Louise C. Loomis.

PRENTICE, J.    It is apparent from the provisions of the testator's will that it was his controlling purpose, in the disposition which he made of his estate, to treat with such perfect equality and impartiality as the circumstances would permit his five sons and only children, and upon the death of each of them to substitute for him in this scheme of equal benefaction those whom the testator conceived to be the proper persons to stand for and represent the deceased as being of or belonging to his stock.   The purpose to avoid all discrimination is one which the testator carried not only to the sons but to their stocks, and to all members of them in whatever degree.   It is equally apparent, however, that the testator had in mind circumstances or possibilities which led him to wish to create spendthrift trusts, in order that beyond peradventure the impartial benefactions which he desired to make might be secured to the intended beneficiaries.   To accomplish this result certain provisions, giving the trustee certain discretionary control over payments of income, appear, which at first sight are suggestive of possible inequalities.    But when these provisions are viewed as mere incidents, as they plainly are, of an attempt to accomplish the testator's secondary object, his main purpose of strict impartiality is only the more clearly indicated. *Mason* v. *Rhode Island Hospital Trust Co.*, 78 Conn. 81, 85, 61 Atl. 57.   This main purpose is one which should be given controlling weight in interpreting and giving effect to the language which he has used in his attempt to effectuate it.    *Matthewson* v. *Saunders*, 11 Conn. 144, 149.

Counsel for all interests agree that the gift over contained in item IV is void, as being in contravention of the statute against perpetuities in force at the death of the tes-

tator. It is impossible to interpret the language of that item with a due regard for either the ordinary meaning of words or the intent of the testator already indicated, without discovering in it gifts to descendants generally, to take effect at some future time, and therefore gifts which the statute in question forbade. *Tingier* v. *Chamberlin*, 71 Conn. 466, 42 Atl. 718.

In items II and III the testator undertook to dispose of the income of the trust fund during the continuance of the trust. No doubt can exist as to the right of the widow, under item II, to receive that income during her life. Before her death, October 24th, 1899, two of the sons had died, each leaving a widow and child. A third has since died leaving a widow, but no children or representatives of children. The question is presented as to the effect of the provisions made in contemplation of such conditions. By the terms of item III it is provided that one fifth of the net annual income may be paid to each of the sons " or to the legal representatives of those, if any, who may have deceased *per stirpes*, " in the event that the trustee should be satisfied that the same was needed for the comfortable support of said son or his family and would not be used in the payment of his debts.

The term " personal representatives, " thus used by the testator to describe those whom he wished to make the beneficiaries of income in the place of a deceased son, is one of flexible meaning. *Staples* v. *Lewis*, 71 Conn. 288, 290, 41 Atl. 815. The sense in which the testator intended it to be used must therefore be gathered, if possible, from the language of the whole instrument read in the light of the relevant circumstances existing at the time of its execution. *Johnson* v. *Edmond*, 65 Conn. 492, 498, 33 Atl. 503; *Crosgrove* v. *Crosgrove*, 69 Conn. 416, 38 Atl. 219.

If it be said that the intent of the testator was to designate, as the substitute beneficiaries, either the lineal descendants of the deceased son, his heirs at law, those who would be the distributees of his estate, or those to whom his estate would immediately pass in its way to the ultimate benefici-

aries thereof, it is clear that the obstacle of the statute against perpetuities would be encountered. *Tingier* v. *Chamberlin*, 71 Conn. 466, 469, 42 Atl. 718.

The uncertainty which oftentimes attends the meaning to be given to the unqualified term "personal representatives" is in the present instance, however, greatly relieved by the addition of the words "*per stirpes*," so that it would require strong indications to the contrary to justify a belief that any different body of persons was intended than those who would inherit from the deceased son or be the distributees of his estate, to be determined either as of the time of his death or as of the time of the several payments, or possibly lineal descendants only. For the present purposes of our discussion, it would matter not which of these somewhat variant forms the testator's intention may have assumed, since all would alike meet the same ultimate fate of invalidity. That any other group of persons than one of these was in the testator's mind as comprising that body who should stand in the place of a deceased son, is rendered all the harder to believe in view of the general scheme and controlling purpose of the will.

But it is urged that the language immediately following the description of the substitute beneficiaries as personal representatives *per stirpes*, indicates that these words were used as synonymous with "family," so that the body which the testator had in mind was the family of the deceased child. It is to be noticed that this word was not used anywhere in the will to describe the beneficiaries. The word only appears as a part of the testator's attempt to create spendthrift trusts, and as furnishing to the trustee as a standard for his exercise of the discretion reposed in him, the comfortable support not only of the son but of his family also. But if the difficulties in the way of any other construction than one of those already indicated are passed by, and it be assumed that it is the family of the deceased son which the testator intended to put in his place, we shall have only succeeded in substituting one word of flexible and uncertain meaning for another, and shall not have succeeded in

avoiding the obstacle of the statute upon any reasonable meaning not palpably inconsistent with the testator's intent. *Crosgrove* v. *Crosgrove*, 69 Conn. 416, 421, 38 Atl. 219.

It is to be borne in mind that the designated group of persons is one whose individual members are given the right to share directly, and in some ascertainable proportions, the testator's bounty. It is not one whose members can only enjoy the benefits of such bounty by indirection and through benefactions made directly to another. If it be said that the word "family" thus substituted as expressive of the testator's conception of the group whose members would be entitled to thus share between them the semi-annually recurring income which would have fallen to the lot of a son, if living, is to be interpreted as denoting a stock of descent, the statute plainly would be contravened. *Hoadly* v. *Wood*, 71 Conn. 452, 456, 42 Atl. 263. If it be held that it is to be construed as designating that collective body of persons living together in the household of which the deceased son was, when living, the head, that body might include more or less than those the testator desired to reach, and might include those whose inclusion the statute forbade. *Wood* v. *Wood*, 63 Conn. 324, 327, 28 Atl. 520. If the word is to be taken in some narrower sense, as including only those members of each household who were the heirs at law of the deceased son, or the distributees of his estate, the result would be the same. *Hart* v. *Goldsmith*, 51 Conn. 479, 480. So if the process of elimination be carried further in the effort to avoid the statute, and it be said that the word should be construed as embracing only those members of each household who might legally participate in the testator's bounty, and whether inclusive or exclusive of a widow, the testator's desire for equality might not be carried out. *St. John* v. *Dann*, 66 Conn. 401, 405, 34 Atl. 110. If we should say that what was meant was that body of persons who were his heirs at law or distributees, wherever they resided, the statute would again be encountered. *Hart* v. *Goldsmith*, 51 Conn. 479, 480. If, in a final effort to escape the prohibitions of

the statute and not too obviously to lose sight of the testa-
tor's controlling purpose, it be held that we should be jus-
tified in saying and should say that the adopted word could
and ought to be construed as descriptive of those persons
and those only, wherever residing, who were the heirs at
law or distributees of the estate of the deceased son and
yet so circumstanced as to be unaffected personally by the
prohibitions referred to, we should arrive at a strained con-
clusion which—especially in view of the qualifying words
"*per stirpes*," which the testator evidently employed for
some purpose—it cannot reasonably be imagined that he
had in mind, and which, in possible contingencies, would
defeat what he sought to accomplish.

We are of the opinion, therefore, that the gifts over of in-
come upon the decease of the testator's sons respectively,
as contained in item III, were void as contravening the
statute against perpetuities.   As a result, two of said gifts,
being that of two fifths of the income, had failed before the
widow's death, thus creating intestacy, and one other has
since failed, with a like result.   In this situation, if the
gifts of two fifths of the income be permitted to stand in
favor of the surviving sons, and of one fifth in favor of the
last survivor of them until by his death the trust should be
terminated, the consequence would be the complete over-
throw of the testator's testamentary scheme and the utter
defeat of his main purpose and intent.   Where he had
planned equality gross inequality would appear.   The ben-
efactions which he had sought to make certain and secure
for all who seemed to him to have a claim upon his bounty,
would be put to the hazard of accidental circumstance, and
the outcome determined in favor of one or another by turns
of the wheel of fortune.   The situation is precisely that
which was disclosed in *White* v. *Allen,* 76 Conn. 185, 190,
56 Atl. 519, and for the reasons there stated it must be held
that except for the gifts of income prior to the death of the
testator's widow, the estate given in trust was the intestate
estate of the testator to be administered and distributed as
such.   See also *Andrews* v. *Rice,* 53 Conn. 566, 5 Atl. 823;

*Morris* v. *Bolles*, 65 Conn. 45; 31 Atl. 538 ; *Ketchum* v. *Corse*, 65 Conn. 85, 31 Atl. 486.

This conclusion renders it unnecessary to give specific answers to the questions set out in the complaint.

The Superior Court is advised that the defendant George H. Gilman as administrator with the will annexed *de bonis non* of the testator, Caleb Clapp, is entitled to the net amount of said trust estate now in the hands of the plaintiff trustee, and it is directed to render judgment accordingly.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.