WILLIAM W. FARNAM ET AL., EXECUTORS AND TRUS-
TEES, vs. HENRY FARNAM ET ALS.

Third Judicial District, Bridgeport, April Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, JS.

The judicial interpretation placed by this court upon a will twenty-five
    years ago, under which property rights became vested and in con-
    formity with which the estate has ever since been administered,
    will not be disturbed when the will is again presented for construc-
    tion, although different conclusions might be reached by the present
    members of the court upon some of the questions then decided, were
    they now presented for the first time.
A testator who died in 1883 left a large property to trustees directing
    them to pay, out of the net income, $25,000 annually to his widow
    during her life, $5,000 annually to each of his five children during
    their lives, and $5,000 to each of his grandchildren as each became
    twenty-one; he directed that during the ten years following his
    death the income (subject to the foregoing payments) should ac-
    cumulate, and that each year after the expiration of the ten-year
    period two thirds of the net annual income should be paid to his
    children then surviving in equal proportions, the "legal representa-
    tives" of each deceased child to be entitled to the share of such in-
    come that the decedent would have taken if living; and that the
    remaining one third of the income should accumulate as part of the
    trust estate.  When his widow and children were all dead the trust
    was to cease, and all the property then constituting the trust fund
    was bequeathed to the testator's grandchildren who might then be
    living, per capita, and in fee simple, but with a provision that if any
    grandchild died leaving a child or children surviving at the expira-
    tion of the trust, such child or children should take the share of his

VOL. LXXXIII—24

Farnam *v.* Farnam.

or their deceased parent, and if the deceased grandchild left no surviving child but did leave a widow, the latter should take one third of the share her husband would have taken had he been living. Upon a suit to determine the validity and construction of these provisions, this court, in 1885, advised the Superior Court that the annuity to the children was payable to the "family" of a deceased child during the continuance of the trust; that the gift of two thirds of the net income, after the lapse of the ten-year period, was in addition to, and not in lieu of, the $5,000 annuities to the children; that by "legal representatives" of deceased children was meant those who would take under the statute of distribution; and that the grandchildren living at the death of the testator, as a class which would open to let in those thereafter born, took a vested interest in the remainder of the testator's estate. Changes in the family situation having occurred by reason of subsequent births, marriages and deaths, the present suit was brought by the trustees for additional light as to their duties. *Held:—*

1. That by "family" the court intended that group of persons, whoever they might be, who at the time each payment became due represented the distributees of the deceased child's intestate estate, and that such persons would take in the proportion indicated by the statute; and therefore that the widow of a deceased child, in the absence of lineal descendants, would be entitled to receive the entire amount of the annuity which the deceased husband had enjoyed; but that the surviving widows and husbands of those whose right to the annuity was substitutionary, were in that capacity excluded.

2. That the fact that such interpretation would now be considered in violation of the then-existing statute of perpetuities, was not sufficient to override the clearly expressed intent of the former opinion, to which effect ought now to be given.

3. That no annuitant acquired a property-right which was transmissible by will or descent, or one which was alienable for a longer period than his own life.

4. That the annuities were not apportionable.

5. That a right, alienable by deed or will and transmissible by descent, to one fifth of two thirds of the net annual income accruing after the termination of the ten-year period, vested in each of the four children of the testator then living, and in the "personal representatives," namely, the widow and seven children, of the fifth child who died before the expiration of that period, the latter taking in the proportions specified by the statute of distribution; such construction finding reasonable support in the language of the will, and being the only one which would avoid the statute against perpetuities and at the same time accomplish results which were fair and impartial to all branches of the testator's family.

6. That the gift of the principal, upon the expiration of the trust, to

the children of grandchildren who might have died during the continuance of the trust, or to the great-grandchildren's widows, was void as against the then-existing statute of perpetuities, thus leaving undisturbed an absolute indefeasible estate in fee in the grandchildren.

7. That the takers of a deceased child's share would include widows and surviving husbands, as well as "heirs" more strictly speaking.

In determining questions respecting the interpretation of a will which were not adjudicated in a former suit, this court will feel bound to recognize the statute of perpetuities and the construction which, as the result of repeated decisions, is now given to it.

If a testamentary provision is fairly open to two constructions, one of which is in contravention of the law and the other not, the latter will be preferred.

This court will not feel bound to follow an inadvertent expression in a former opinion, made during the discussion of an incidental matter and having no concern with any situation then before the court.

Argued April 20th—decided July 12th, 1910.

Suit to determine the validity and construction of the will of Henry Farnam of New Haven, deceased, brought to and reserved by the Superior Court in New Haven County, *Bennett, J.*, upon the facts stated in the complaint, for the advice of this court.

The contents of the will, and the facts pertinent to its construction as they had occurred at the time of the decision of *Farnam* v. *Farnam*, 53 Conn. 261, 2 Atl. 325, 5 Atl. 682, which concerned the same instrument, are found fully stated in connection with the report of that case. The following events have occurred since that time, and the following situations arisen: The testator's son, George B. Farnam, died testate December 22d, 1886, leaving a widow and seven children. This widow died April 30th, 1907. All of his seven children were living at the date of the execution of their grandfather's will, and are now living and unmarried. The widow of the testator died March 6th, 1904, having been paid the full amount of the annuity provided for her in the will. The testator's son, Charles H. Farnam, died September 24th, 1909,

His wife had previously died. His only son, Charles
H. Farnam, Jr., born in 1873, died May 8th, 1909,
a few months before his father, leaving a widow, to
whom he was married June 13th, 1899. No child was
ever born to him. The only other child of Charles, Sr.,
a daughter, was born in 1871. In 1891 she married.
She and her husband are now living. There is no
child of hers living. The testator's son, William W.
Farnam, and his wife, are now living. He has had no
children. Sarah Sheffield Farnam Whitney, the fourth
child of the testator, her husband and their six chil-
dren are now living. Three of these children are mar-
ried, and two of them have living children, of whom
the eldest was born in December, 1899. The husbands
of these three children are all living. Sarah Tracy,
the only remaining child of Mrs. Whitney, married,
and in 1901 died intestate leaving a child. The hus-
band and child now survive. All of said children of
Mrs. Whitney were born before the execution of the
testator's will, except two. The testator's remaining
child, Henry W., was married in 1890. He, his wife and
three children, now survive. Two other children,
who died in infancy, were born to him. All of the liv-
ing persons above referred to are parties to the action,
as are also the sole surviving executor of the will of
George B. Farnam, deceased, the executrix of the will
of Charles H. Farnam, Sr., deceased, the executor in
Connecticut of the will of Charles H. Farnam, Jr.,
deceased, and the administrator of the estate of Sarah
Tracy Sanford, née Whitney, deceased.

*Erroll M. Augur*, for the plaintiffs.

*John W. Bristol* and *Samuel H. Fisher*, for Anne
Farnam Woodward, personally and as executrix, and
Frank L. Woodward.

*Sanford Stoddard,* and *Edward H. Blanc* of New York, for the executors of the will of Charles Henry Farnam, Jr., deceased, and for Ruth Stanley Farnam.

*Henry C. White,* for all the living grandchildren except Mrs. Woodward.

*George D. Watrous,* for Eli Whitney, administrator, *et als.*

*Henry Stoddard,* for William W. Farnam *et als.,* living children of the testator.

PRENTICE, J.   This will was before this court upon a reservation for advice in *Farnam* v. *Farnam,* 53 Conn. 261, 2 Atl. 325, 5 Atl. 682.   At that time the intent of the testator was defined, the construction to be given to his language established, and the legal operation of that language for the most part determined.   The Superior Court subsequently rendered its judgment wherein the construction of the will was settled and adjudged in conformity with the advice given, and the trustees were ordered to proceed with the execution of the trust pursuant to the terms of the judgment.   The years which have since passed have been productive of situations in the family history which prompt the trustees to seek from the Superior Court for their guidance certain additional advice pertinent to existing conditions, and to others which may reasonably be anticipated in the future.   The advice thus asked relates in part to the interpretation to be given to an expression contained in the former opinion and judgment, in part looks to the express adjudication of questions which, while more or less affected by the former conclusions and the governing principles laid down, were not distinctly passed upon, and in part concerns the operative effect of a provision in the will which the court found no occasion to adjudicate.

To the extent that this judgment established the construction of the will, or declared its operative effect in matters concerning which there were or are existing rights and interests, it was a judicial declaration which we ought not to disturb, whatever our conclusions might be upon the questions decided, were they now presented for the first time. The parties interested have for these many years, doubtless, regulated their lives and their affairs in conformity to it, and all those and their privies, whose rights as between each other were thereby directly fixed and determined, acquired property rights which became vested in them by the court's action. *Gilman* v. *Tucker,* 128 N. Y. 190, 203, 204, 28 N. E. 1040; *Germania Savings Bank* v. *Suspension Bridge,* 159 N. Y. 362, 368, 54 N. E. 33; *Humphrey* v. *Gerard, ante,* p. 346, 77 Atl. 65; *Smith* v. *Lewis,* 26 Conn. 110, 117; *Nichols* v. *Bridgeport,* 27 id. 459, 462.

We are thus enabled to begin our inquiries with certain premises fixed. In so far as the questions presented to us are but repetitions in another form of those heretofore adjudicated, we have only to reassert what was then said. In so far as our advice is asked for the purpose of having a formal declaration concerning conditions not directly passed upon before, but which involve as factors in them conclusions embodied in the former judgment, or underlying it, it is our manifest duty to accept the former conclusions as fixing the law of the instrument in so far as they go, and thus pursue the only course which can make the operation of the will consistent throughout, and deal with the rights and interests of all parties upon an equal basis. In so far as we are called upon to interpret the language of the court used in the former opinion and judgment, and determine its application, we have but to declare its intended meaning, if that meaning is apparent.

The questions propounded relate to three subject-

matters, to wit: (1) the $5,000 annuities given in the second clause of article "fourth"; (2) the gifts of net annual income provided for in the fourth clause of the same article; and (3) the disposition of the remainder of the trust fund made in article fifth.

The judgment, rendered in conformity to the advice of this court, declared that the above-described annuities were payable after the death of a child to the "family" of such child during the continuance of the trust. The Superior Court is now asked to define the term "family" as thus used, to announce who are to be regarded as embraced within its description, and to determine the basis upon which those within the description are to share. The word "family" is one of flexible and uncertain meaning, and will be construed differently according as the circumstances may seem to require, in order that the apparent meaning in which it is used in any given case may be carried into effect. *Lepard* v. *Clapp*, 80 Conn. 29, 34, 66 Atl. 780.

The opinion of the court leaves no room for reasonable doubt as to what it meant by the use of the term. It was declared that what the testator studiously sought to accomplish throughout the provisions of his will was exact equality and impartiality as between the different members and branches of his stock, that the annuities were manifestly given for purposes of maintenance, that it could not be presumed that the testator would have cut off the family of a child from participation after a child's death, and that, as he had not done so expressly, the court was not disposed to do so by implication. From these premises it was argued that his intent in providing these annual payments must have been one which would accomplish the ends sought, and that the only construction which would do so was one which continued the benefit of each of them to the heirs of a child deceased as long as the trust should

continue. This conclusion was amplified and made
more distinct by the final statement that in making a
declaration of the court's conclusion in this regard its
purpose was to follow, as nearly as might be, the stat-
ute of distribution as the guiding principle of succes-
sion.

The court thus clearly manifested its purpose and the
result which it meant to effectuate. It plainly indicated
its conclusion that the right to the enjoyment of the
several annuity payments, as maintenance provisions,
was not vested in the several children of the testator
as one for the life of the trust; that the death of any one
of such children would not terminate the payments set
apart for his or her enjoyment primarily, but that, on
the contrary, such payments would be continued to
others surviving him or her as substitutes for the
deceased; that this process of substitution of living
persons for the dead child, as beneficiaries of the pay-
ment which the child, if living, would receive, was to
go on until the termination of the trust; that the per-
sons who were to be regarded as these substitutes were
the "heirs" of the deceased child, using that term in
the sense of the distributees of his estate in intestacy;
and that the basis of division among these persons was
that fixed by the statute of distribution. It is evident
from the fact that these annuities were declared to be
maintenance provisions, from the declaration of the
opinion and judgment that their payment was to be
continued to the families of deceased children during
the life of the trust, and from the careful avoidance of
all expression by the court indicative of a vesting in
somebody at some time of the right to them for the
future, that it was the intended meaning of the court
that the payments as they should accrue were to be
made to that group of persons, whoever they might be,
who at the time each payment became due represented

the distributees of the deceased child's intestate estate as determined at that time, and in such proportions between them as the statute would point out.

One necessary result of this conclusion is that the widow of a deceased child would be a member of the family group of beneficiaries substituted for the deceased, since she would be a distributee of his intestate estate. Suppose, however, that one of the testator's children should die leaving a widow surviving him, but no lineal descendants. The opinion makes no express statement as to this situation, concerning which we are asked to advise, nor any statement from which it can be gathered with certainty what the intended meaning of the court was in its use of the term "family," as applied to such a situation. It would appear, however, from its premises and reasoning, as well as from a passage upon a closely related subject, that the conception of the families of his children which the testator would most naturally entertain under such conditions was that of the court, to which it was intended to give effect, to wit, that in such case the surviving widow, as the only representative of the family group of which the deceased child would be regarded as the head, would be entitled to receive the entire amount of the annuity which her husband, while living, enjoyed. Such is the construction to be given to the former judgment, should the situation indicated arise.

Another consequence attends the conclusion that the group of persons entitled to participate in the enjoyment of these annuity payments in substitution for a deceased child is made up of and confined to those who for the time being could qualify as distributees of intestate estate of the deceased, and that is, that the surviving widows and husbands of persons whose right to enjoy the benefit of the payments is substitutionary, are in that capacity excluded.

It must, of course, be admitted that if the will were now before us for the first time, we should be unable, by reason of the statute against perpetuities, to give it the effect thus indicated. For this reason we should doubtless feel constrained to give to the language of the former opinion some interpretation which would avoid the prohibition of the statute as we now understand its application, if its intended meaning was less certain and less distinctly announced, and there appeared some reasonable construction which would lead to that result. But we find it alike impossible to arrive at an interpretation, other than that stated, of the language in which the ultimate conclusions of the court are couched, which consists with its declared premises, reasoning and subordinate conclusions, or one which, having regard for them, would point out a way of escape from the reach of the statute. The meaning of the court was too clearly expressed to be misunderstood, and its adjudication must be accepted as that above outlined. Such being the case, effect ought to be given to it as made.

In view of what has been said, it is unnecessary to give categorical answers to certain of the questions propounded in relation to this general subject, and it is perhaps superfluous to return a specific negative to the inquiry as to whether the right to these annuities, or portions of them, for the future, forms any part of the estate of the recipient, subject to being disposed of by will, or to descend and be distributed among his next of kin in the event of his death intestate. The necessary consequence of the former judgment, as we have construed it, is that no annuitant acquires a property right which is transmissible by will or descent, or one which is alienable for a period longer than his life. The right which is his to enjoy during his lifetime is one which passes upon his death, by virtue of the operation

of the will of Mr. Farnam, to those thereafter entitled to its enjoyment.

These conclusions render it necessary to give our advice in response to questions as to whether or not these annuities are apportionable, and if so, upon what basis the apportionment should be made. The will provides that the payments of the annual sums are to be made quarterly. It is the accepted rule in this State that annuities are not apportionable except under two conditions, neither of which is present in this case. *Tracy* v. *Strong*, 2 Conn. 659, 663; *Mower* v. *Sanford*, 76 id. 504, 507, 57 Atl. 119. One who has received, or by the terms of the grant or obligation has become entitled to receive, payment of a stated portion of the annual sum when the event which terminates the right to an annuity happens, is, of course, entitled to retain or receive that portion as an amount then payable. But he has no right to any further amount, although time may have run upon the period which is to elapse before another payment would be due. When the conditions are such as they are here, that the annuity continues to be payable to other parties after the death of a beneficiary, the right to receive any payment, and the whole of it, accruing after such death, enures to those who in the established course of succession become entitled to payments made as of that date.

The questions presented relating to the division of the two thirds of the net income accruing after the period of ten years succeeding the death of the testator had elapsed, as provided in clause four of the fourth article, were for the most part not passed upon, or only indirectly passed upon, in the former opinion, or determined by the judgment then rendered. The language of the clause makes it clear that the gifts of this income first began to operate beneficially ten years after the testator's death, and that those who were then to be-

come the beneficiaries of them were the children of the testator who should then be living and the "legal representatives" of any child then deceased, as standing in the place of the deceased child, and taking what it would take, if then living. With respect to this language and its construction and effect, it was adjudged: (1) that these gifts of net income were in addition to the annuities; and (2) that by "legal representatives," as used in the clause, was meant those who would take under the statute of distribution. There was, therefore, an express and explicit adjudication as to the precise persons who would be the beneficiaries of the income payments under this clause, when the time should come when they were to be first made. This adjudication involves one that in the division of that share which would have belonged to a deceased child, if living, the persons entitled to it would take in proportions to be determined by the statute, and that such a division and appropriation would not be one forbidden by law. This adjudication also involved, as an inevitable consequence, that the takers of a deceased child's share would include widows and surviving husbands as well as heirs more strictly speaking. Their status as persons entitled to take in the distribution of intestate estate is as fixed and certain as is that of any other person. This the former opinion expressly recognized.

So far there is nothing left for us to independently determine. The former adjudication, however, stopped here, and did not attempt to deal with the possible conditions of any after time, and to declare what would follow upon the death of any person whose right to participate in the division of this income at the expiration of the ten years had become fixed by the expiration of that period and the family situation as it then was. Already the death of a child who survived the

ten-year period has given a present significance to certain questions which were not answered before, and the Superior Court is asked to advise as to the operation of the will under the new and anticipated conditions, with which neither the opinion nor the judgment in the former case had occasion to specifically deal.

In determining these unadjudicated questions we do not feel at liberty to be unmindful of the statute against perpetuities, and the construction which, as the result of repeated decisions, is now given to it. While bound to thus recognize the statute in arriving at our independent conclusions, we are also required to apply to the construction of the testator's testamentary provisions the presumption that they were not violative of the law, and to construe them in the light of that presumption, so that if his language is susceptible of two reasonable constructions, one of which is in contravention of the law, and the other not, the latter will be preferred. *St. John* v. *Dann,* 66 Conn. 401, 405, 34 Atl. 110; *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645. The testator made no provision for a gift over after the death of any of the persons designated as the first recipients of this income, and none whatever for such a contingency. And yet he must have known that such an one would occur, and quite possibly often occur, before the trust would in the natural order of events terminate. He must, therefore, have supposed that the effect of his language would be to vest in each of the original recipients of the income, as determined at the end of the ten-year period, the right for the whole remaining term of the trust to that share of it, as it might from time to time accrue and become payable, which became his at the end of said period, or that its consequence would be that the death of any one of the original recipients would put an end to the payment to anybody of that portion of the income which

had been his, or that his provision was such that the right to the enjoyment of the accruing income as time went on, and family conditions changed, would pass in succession in some way from one person or generation to another, until the trust which might well continue for fifty years or more should cease.

The statute against perpetuities forbade the accomplishment of the last of these results. It is inconceivable that the testator sought to achieve the second, with its certain inequalities of the gravest character. The intention of the testator, apparent upon the face of the will, and declared in the former opinion as the very foundation of all its provisions, is prohibitive of any such conclusion. The first has reasonable support in the language of the testator, and accomplishes results which are equal and impartial as to all branches of his family and their members, and, in so far as appears, is in harmony with what he intended. We are of the opinion, therefore, that this is the construction which should be given to it, with the result that the right to have and enjoy, during the whole remaining term of the trust created by the will, one fifth of the net annual income provided to be paid over by the trustees after the ten-year period should have elapsed, became vested in each of the four children of the testator who survived the ten-year period as his or her vested estate, alienable, transmissible by descent, and subject to disposition by will, and that the right to have and enjoy in like manner, to the same extent, and with the same incidents, one of said equal parts became vested in the "legal representatives," as defined, of George B. Farnam, who did not survive the ten-year period, to wit, in his widow, now deceased, and his seven children, then and now surviving, and his only issue, and in such proportions between them as the statute of distribution would determine.

This conclusion renders it unnecessary to answer specifically all the various questions propounded in relation to this subject. It follows, of course, that the right to one of the one-fifth portions of the two thirds of the net income annually distributed was vested in Charles H. Farnam, Sr., at the time of his decease, that it thereupon formed a part of his estate, that it was subject to disposition by his will, and that, failing such disposition, it was to be administered and distributed as his intestate estate.

The questions presented as to the division of the principal of the trust fund following the termination of the trust arise from the provisions of article fifth. The first portion of this article is as follows: "At the decease of the last survivor of my said children, if my said wife shall not then be living, but if living, then upon her death, this trust shall cease, and I give, devise and bequeath all the estate which shall then be held in trust under this will to my grandchildren who shall then be living, to be equally divided among them per capita and not per stirpes, and to their heirs forever." By the judgment rendered in the former case it was adjudged that the grandchildren took a vested interest in the property so given, they taking as a class, opening to let in after-born grandchildren. No adjudication was made as to the legal effect of the language of the article which immediately followed. The opinion examined exhaustively the question as to the construction to be given to the language of the first portion of the article, and the conclusion reached was that the gift therein made of this fund was one which vested in the grandchildren at the testator's death. It refrained from passing upon the question whether the attempted gifts over which were contained in the remaining portion of the article were in contravention of the statute against perpetuities, and assigned as a

reason for so doing that it was not one of great practical importance, since, the interest being vested in the grandchildren, their children and widows would take under the statute of distribution. We have now to determine this question, and in case it is determined that the attempted gifts over, or any of them, to great-grandchildren and to widows of grandchildren are void, to further advise to whom, in what proportion, and in what manner the property which is the subject of the gift or gifts so declared void will belong.

There can be no doubt that these attempted gifts over, whether to great-grandchildren or to widows of grandchildren, are within the prohibition of the statute and altogether void. *Tingier* v. *Chamberlin,* 71 Conn. 466, 469, 42 Atl. 718. The failure of the limitation over left the prior estate vested in the grandchildren undisturbed. *Johnson* v. *Webber,* 65 Conn. 501, 514, 33 Atl. 506. In the former opinion it was said that the right and interest vested in the grandchildren was one which could only be defeated by their death, during the continuance of the trust, leaving no widow and no children, and that this was clearly a condition subsequent. In the judgment the statement assumed the affirmative form, and was to the effect that in case of the death of any of the grandchildren before distribution without children and leaving no widow, the title of such grandchild would divest. The statement of the opinion from which that in the judgment was derived was doubtless made inadvertently, in the course of the court's discussion of the subject before it, and with no intent to lay down in positive form a rule of law. We do not discover that counsel advanced any such proposition, and it was not discussed by the court. It related to a matter purely incidental to the subject under discussion, and did not concern any situation before the court. Evidently the language was used

casually, and without consideration, and with no thought that a rule of law, which might in the future be appealed to as regulating the rights of parties under the will, was being formulated. The only reason which, by any possibility, could be advanced in support of the conclusion stated, was such as could be found in the provisions for a limitation over contained in the latter part of clause fifth. The authorities elsewhere, and our own, join with reason in asserting the proposition that the failure of a limitation over after a fee leaves an absolute estate in the first taker. *Johnson* v. *Webber,* 65 Conn. 501, 514, 33 Atl. 506; *Saxton* v. *Webber,* 20 L. R. A. (Wis.) 509, note 515; *Brattle Square Church* v. *Grant,* 3 Gray (Mass.) 142, 146; *Drummond* v. *Drummond,* 26 N. J. Eq. 234; *Leonard* v. *Burr,* 18 N. Y. 96, 105.

Had the judgment not contained its expression upon this subject we should have had less hesitation than we have in now asserting what we believe to be the sound legal principle. Even as it is, since the narrow situation within the purview of that expression is one that has never arisen, and no right adverse to the grandchildren can be said to have accrued under the proposition announced, we feel that we ought to correct the former inadvertent error before harm can come by reason of it. We, therefore, advise the Superior Court to adjudge that upon the death of the testator his grandchildren, as a class which would open to let in grandchildren thereafter born, took an indefeasible vested interest in the remainder of the trust fund in the hands of the trustees at the termination of the trust, and that this interest was one which would pass by alienation or will, or by distribution, if there was no will.

We have no occasion to determine any questions which may have arisen, or may arise, in the course of

the settlement of the estate of any deceased beneficiary under Mr. Farnam's will, which grow out of a claimed interest in such estate, and do not concern the operation of the will, or the extent and character of any interest under it.

The Superior Court is advised to render judgment in conformity with the conclusions above expressed.

No costs in this court will be taxed in favor of any party.

In this opinion the other judges concurred.